## The Ardesco Oil Company *versus* Gilson.

1. A corporation can act only through its officers and agents, and the officer having charge of its business for practical purposes must be regarded as the corporation.

2. The duty and liability of a corporation to its servants is the same as that of natural persons.

3. Employers owe to their servants and workmen the exercise of reasonable care and proper diligence in providing them with safe machinery and suitable tools, and employing with them fit and competent superintendents and fellow-workmen.

4. If a person employs mechanics or contractors in an independent business, and they are of good character and there was no want of care in choosing them, he is not liable for injuries to others from their negligence or want of skill.

5. If one employs a reputable machinist to construct a steam-engine and it blows up from bad materials or unskilful work, the employer is not responsible for injury to his own servant or to a third person.

[Ardesco Oil Co. *v.* Gilson.]

6. The rule is different if the machine is made according to the employer's own plan, or he interferes and gives directions as to its manner of construction.

7. There is no difference between liability to a stranger and to a servant for a man's own negligence or want of skill.

8. A master is not responsible for an injury to a servant by the negligence of a fellow-servant unless he has failed in ordinary care in the employment of the culpable party.

9. What is due care and ordinary diligence depends much on the kind of business and the sort of material handled.

10. The competency of a person to give his opinion as an expert, if on a preliminary examination he appears to have any pretensions to speak as such, rests much in the discretion of the judge trying the cause.

11. It is not imperatively required that the business or profession of the witness should be that which would enable him to form an opinion.

November 5th 1869.   Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the District Court of *Allegheny county:* No. 29, to October and November Term 1869.

This was an action on the case for negligence, brought March 29th 1867, by John P. Gilson against the Ardesco Oil Company. The plaintiff was in the employ of the defendants, as carpenter, at their oil-mills, and by the explosion of two of their stills he was badly injured; this suit was brought to recover compensation for the injury.

The case was tried January 11th 1869, before Kirkpatrick, J.

A. T. Schmidt, superintendent of defendants, testified for plaintiff: that plaintiff worked about 150 feet distant from the stills; there were six stills, made by one Graber and another manufacturer; two of those made by Graber exploded; witness had frequently put up stills, but never any so large or made of iron so weak; Mr. O'Hara, president of the company, ordered the stills; he was there when they were put up; he did not consult witness about the stills. About two weeks after the stills were completed the oil—crude petroleum—was put in and fire put under them; as soon as the oil heated the still moved up and down, both on the top and the sides, which they should not have done; it frightened the witness, and he informed O'Hara immediately. He considered what he would do to prevent this; iron rods to stiffen the stills were put in: they did not consider that sufficient, but would try it; the rods were pulled out of their places; O'Hara told witness to consult Graber and to do what witness and Graber should think best; Graber came and found it difficult to know what to do; they put angle iron on the outside and on the top of the stills; put fire under a day or two afterwards, about 5 o'clock in the morning; all went well till about 11 o'clock, when yellow smoke came out, but nothing very alarming; about 12 o'clock the smoke increased and the explosion occurred; the top of one still was lifted off and part of the side; plaintiff was in his shop, which was set on fire almost immediately, and the plaintiff badly burned.   Wit-

[Ardesco Oil Co. *v.* Gilson.]

ness thought the stills too large for the thickness of the iron, but thought they would do when the angle iron was put on. Other witnesses testified that when the oil was heated, the stills surged and heaved, which should not have occurred.

T. H. Cargo testified that he was steamfitter at the defendants' works, and was there at the explosion. He had no knowledge of stills except working with them and fitting them up after they are put up.

The plaintiff then proposed to ask witness, whether, in his opinion, the iron of which the tank was composed was of sufficient strength. The question was objected to, because the witness had not shown himself to be an expert. The court allowed the question to be put and sealed a bill of exceptions.

Witness did not think the iron was strong enough when the stills were put up; before the still which exploded was put up there was a small crack on its top. There was other evidence by the plaintiff bearing upon the question of the character of the stills, of the repairs to them, their manner of working, &c. Also the extent of plaintiff's injury, and evidence bearing on the question of damages.

Michael Graber, the manufacturer, who was called by the defendants, testified that the stills were made on Mr. O'Hara's plan, and that stills were not made so at the time of the trial; the stills were made of Lyon & Short's iron, which was the best boiler iron in the market; witness considered the iron sufficient for the size of the still; he went to examine the stills and concluded to put in angle iron to stiffen the tops and sides, so he and Mr. O'Hara thought; witness thought that the angle iron would remedy the defect, and so told Mr. O'Hara. There was other evidence on the part of the defendant in answer to the plaintiff's case.

Mr. O'Hara was not a machinist.

The defendants' 5th and 6th points, and the answers of the court were:—

"5. That in cases of this kind, what amounts to negligence on part of defendant, is a question of law for the court, and taking all of plaintiff's testimony to be true, with the undisputed testimony of defendant, no such act or default on part of defendant has been shown, as would warrant the court in submitting to the jury the question whether the negligence of defendant had caused, or resulted in the loss and damage sustained by the plaintiff."

"Affirmed, as to negligence being a question for the court. Refused as to the balance."

"6. That taking all the testimony of plaintiff to be true, it does not make out a case of negligence on the part of defendant to warrant a verdict in favor of plaintiff."

"Refused."

The court referred to, and commented upon the evidence, and

[Ardesco Oil Co. *v.* Gilson.]

further charged : * * * " Having learned of the imperfect manner of the performance of the stills when found tested, did or did not Mr. O'Hara do all that ought reasonably to have been required of him, in the light of facts and circumstances as they *then* existed. You must judge Mr. O'Hara by what he *then* knew, and not by what he and you know *now*. What would you have done had you been in his place, with the knowledge he then possessed ? Judge him as you would have yourself judged under like circumstances and at that time. Keep to this point in all your deliberations upon the question of negligence, and do not deliberate in the blaze of this fearful baptism of fire happening afterward, which showed too truly that an accident had happened, and that the plaintiff, but for God's mercy, would not be alive to-day to tell the tale. Keeping steadily in view what he saw and what he heard before the accident, and what he did in order to make these stills perfect in performance and secure from accident, proceed to judge Mr. O'Hara, and through him the defendants whom he represents. Were the stills sufficient in structure ? Were they of proper material, properly used ? If not, did the defendants do all that reasonable men should have done under the circumstances ? [The plaintiff says the defendants should have taken and thrown away these stills simply because they ' surged' and ' heaved' as described by the witnesses, and so ask us to say to you as a matter of law. We will not, and do not, so instruct you, but leave it to you to say, as the triers between the parties as a question of fact, what he should have done under all the circumstances. If you, upon your oaths, looking at this case in all its aspects, and putting yourselves in his position, think this was what a person of ordinary prudence and caution ought to have done, then your verdict must be for the plaintiff.] If, upon the other hand, you are of opinion that being, as is admitted, no mechanic, Mr. O'Hara, relying upon the suggestion of Schmidt and Graber, who were men admittedly competent, had a right to think that the defect could be remedied, and that he did in good faith attempt the remedies, and also did whatever any person in his condition, of his mechanical knowledge, and placed in his circumstances, would have done, then this is an end of the case for the plaintiff, and your verdict must be for the defendants." * * *

The verdict was for the plaintiff for $1500.

The defendants took out a writ of error. They assigned for error, the answers to their points, the part of the charge in brackets ; submitting to the jury to find negligence and want of ordinary care on the part of defendant, when there was no evidence to warrant such finding, and the admission of the evidence objected to.

*H. Burgwin,* for plaintiffs in error, cited Mob. & Ohio Rail-

[Ardesco Oil Co. *v.* Gilson.]

road *v.* Thomas, 8 Am. Law Reg. 154; Warner *v.* Erie Railway, Id. 209; Wilson *v.* Murray, House of Lords Cases, Pt. 3, July 1868, p. 326.

*D. W. & A. S. Bell,* for defendant in error.

The opinion of the court was delivered, January 3d 1870, by

SHARSWOOD, J.—The first four errors assigned are to the answers to the points and to the charge of the learned judge in the court below in this, that, without any, or sufficient evidence, he left it to the jury to determine whether the injury which the plaintiff below had sustained from the explosion of two oil stills in the oil refinery establishment of the defendants had resulted from their negligence.

The defendants were a corporation, and could only act through their officers or agents. It is their officer, having charge of their business, who, for all practical purposes, must be regarded as the corporation itself: Frazier *v.* The Pennsylvania Railroad Co., 2 Wright 104. The same rule of liability must be applied to them as to natural persons. The duty which they owe to their servants and employees is the same. What employers owe to their servants and workmen is the exercise of reasonable care and proper diligence in providing them with safe machinery and suitable tools, and in employing with them fit and competent superintendents and fellow-workmen. Not that they warrant the result, nor that extraordinary vigilance is exacted of them. It is nevertheless true, as stated by the learned judge below, in his charge, that what is due care and ordinary diligence will much depend on the kind of business which is carried on, and the sort of material which is handled. The proprietor of a powder-mill must exert more precaution than the master of a blacksmith shop. So, in such an establishment as that carried on by the defendants below—in refining oil from crude petroleum—a material highly inflammable and explosive, we are bound to examine the question of negligence with a regard to this circumstance.

It may be considered as now settled that, if a person employs others, not as servants, but as mechanics, or contractors in an independent business, and they are of good character, if there was no want of due care in choosing them, he incurs no liability for injuries resulting to others from their negligence or want of skill: Painter *v.* The Mayor of Pittsburg, 10 Wright 213. If I employ a well known and reputable machinist to construct a steam-engine, and it blows up from bad materials or unskilful work, I am not responsible for any injury which may result, whether to my own servant or to a third person. The rule is different if the machine is made according to my own plan, or if I interfere and give directions as to the manner of its construction. The machinist

[Ardesco Oil Co. v. Gilson.]

then becomes my servant, and *respondeat superior* is the rule: God-ley *v.* Hagerty, 8 Harris 387; Carson *v.* Godley, 2 Casey 111. There is no difference between liability to a stranger and to a servant for a man's own negligence or want of skill; though a master is not responsible for an injury to a servant by the negligence of a fellow-servant, unless he has failed in ordinary care in the employment of the culpable party: Ryan *v.* The Cumberland Valley Railroad Co., 11 Harris 384; Frazier *v.* The Pennsylvania Railroad Co., 2 Wright 104; Hunt *v.* The Same, 1 P. F. Smith 475; Caldwell *v.* Brown, 3 Id.

Applying these principles to this case, we think that the learned judge below was entirely right in submitting the question of negligence to the jury. Graber, the machinist, testified that the stills were made according to the plan of Mr. O'Hara, the president of the company defendants. When, upon trial, they were found to be defective, he says: "We concluded to put in angle iron to stiffen the tops and sides; so Mr. O'Hara and I thought." The opinion of the president, assuming to understand the subject, would naturally have great weight with the mechanic. Had he been intrusted with the work under a contract to construct stills of sufficient strength for the purpose, leaving that to his own judgment and skill, the company could not have been visited with the consequences of his failure, but such does not appear to have been the case in this instance; at least there was evidence for the jury.

The fifth assignment is that the court below erred in permitting a witness for the plaintiff to give his opinion that the iron, of which the still was composed, was not of sufficient strength. The ground of the exception is that he was not such an expert as to make his opinion competent. He was a steam fitter at the defendants' works, and said that he had no knowledge of stills, except working with them and fitting them up, after they were put up. An expert, as the word imports, is one having had experience. No clearly defined rule is to be found in the books as to what constitutes an expert. Much depends upon the nature of the question in regard to which an opinion is asked. There are some matters of which every man, with ordinary opportunities of observation, is able to form a reliable opinion: Wilkinson *v.* Moseley, 30 Alab. 562; Dewitt *v.* Bailey, 17 New York 340. It is not necessary, as it is said in one case, to call a drover or butcher to prove the value of a cow: Ohio Railroad Co. *v.* Irwin, 27 Illinois 178. Nor is it imperatively required that the business or profession of the witness should be that which would enable him to form an opinion: Van Deusen *v.* Young, 29 Barb. 9; Smith *v.* Hill, 22 Id. 656; Price *v.* Powell, 3 Comstock 322; Fowler *v.* Middleton, 6 Allen 92. In Phillips *v.* Gregg, 10 Watts 158, witnesses, who were not lawyers by profession, were received to testify as to what constituted a lawful marriage in the settlements of the Mis-

[Ardesco Oil Co. *v.* Gilson.]

sissippi valley, half a century before. While, undoubtedly, it must appear that the witness has enjoyed some means of special knowledge or experience, no rule can be laid down, in the nature of things, as to the extent of it. It must be for the jury to judge of the weight to which his opinion is entitled. It was held in Howard *v.* Providence, 6 Rhode Island 514, that the competency of a person to give his opinion under oath as an expert, so that, upon the preliminary examination, he appears to have any pretensions to speak as such, rests very much in the discretion of the judge trying the cause. This is in accordance with our own cases of Leasure *v.* Hillegas, 4 S. & R. 313, and Flinn *v.* McGonigle, 9 W. & S. 75, where, upon a similar preliminary question of fact as to the loss of a paper before admitting parol evidence of its contents, it was said that it must be a strong case to induce this court to interfere. It follows that we cannot pronounce the admission of the evidence in this case to have been erroneous.

Judgment affirmed.