# Mudano *v.* Phila. Rapid Transit Co., Appellant.

*Negligence—Damages—Evidence—Medical experts—Opinions— Contradictory opinions—Guess—Words and phrases—"Probable."*

1. In a negligence case, where the right to recover a material portion of the damages sought by plaintiff depends on a determination whether certain serious conditions of which he complained, with their accompanying pain, suffering, inconvenience and expense, were properly attributable to the injuries received by him at the time of the accident, and not to another independent cause, the burden is on plaintiff to prove by legally sufficient evidence that all of the injuries for which he was claiming damages were properly attributable, in a medical sense, to the accident.

2. In such case the testimony of two physicians called as experts by him to testify in regard to his injuries, must be treated as governed by the rules applicable to the evidence of plaintiff himself.

3. If, in thus speaking through his experts, his testimony is so conflicting regarding the proper inferences to be drawn as to render either one of two irreconcilable, yet governing, inferences possible of adoption, the adoption of the one or the other would be nothing more than a guess, and, under such circumstances, plaintiff fails to sustain the burden of proof which the law casts upon him.

4. While, if the testimony of a witness is contradictory, generally speaking, it is for the jury to reconcile such contradictions, yet, if the plaintiff himself is the witness, and his uncorroborated testimony is so conflicting as to render it impossible to make an essential finding therefrom, it is proper for the court to instruct against him.

5. Where the plaintiff undertakes to speak by a medical expert for the purpose of proving what he claims to be the efficient cause of particular results for which he is claiming damages, and he does so because scientific knowledge is requisite for the elucidation of the question, the testimony of the expert on a scientific point must be reasonably consistent and unequivocal.

6. If plaintiff calls more than one expert, there must be no absolute contradiction in their ultimate conclusions, though minor points of difference between such witnesses will not necessarily exclude their testimony.

7. The jury, lacking scientific knowledge themselves, are not obliged to choose between contradictory advice tendered by plaintiff's medical experts, on a purely scientific point, although at times, they must determine whether to accept the contradictory advise of experts on one side or the other of a case.

8. While the contradictory evidence of his own experts may not in all instances necessarily destroy a litigant's case, yet when plaintiff has the burden of proof on an issue of fact which goes to the essence of any material part of his case, and he selects scientific experts to speak for him, because the point at issue can be solved only in that way, such experts are peculiarly his mouthpiece, and must be viewed as though they collectively were the plaintiff himself.

9. Where plaintiff's heel was injured in an accident, and he claims damages for such injury and also for an ulcerated condition of the heel which developed sixteen months after the accident, and after the wound had apparently healed, and defendant claims that the ulcerated condition was due to the rubbing of a shoe, and plaintiff calls two medical experts, one of whom attributed the ulcerated condition to the accident, and the other testified that in his professional opinion the ulcerated condition was probably due to the rubbing of the shoe, the testimony of both experts should be stricken out.

10. In such case, as the issue to be determined was not whether the ulcerated condition of the heel was due to the abrasion of the shoe, but whether it was caused by the accident, the use of the word "probable" by the expert is not to be given the effect it would have, if it had been used in expressing an opinion as to whether the accident caused the ulceration.

*Appeals—Reversal—Reduction of damages—New trial.*

11. Where by reason of improper evidence an excessive verdict and judgment results, and there was evidence to sustain a reduced judgment, the appellate court in reversing the judgment will direct the record returned to the court below with instructions to reinstate the motion for a new trial and reduce the verdict to such reasonable amount as in its opinion will make due allowance for the improper award of damages contained therein, such order to contain an option to both plaintiff and defendant to accept the reduction or a new trial, and if the diminution of the verdict is accepted by both parties, the court below to discharge the rule for a new trial and enter judgment in plaintiff's favor, otherwise the rule to be made absolute.

Argued February 2, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, KEPHART and SCHAFFER, JJ.

Appeal, No. 131, Jan. T., 1927, by defendant, from judgment of C. P. No. 1, Phila. Co., Sept. T., 1925, No. 6640, on verdict for plaintiff, in case of Joseph Mudano v. Philadelphia Rapid Transit Co. Reversed.

Trespass for personal injuries. Before McDEVITT, J.

Verdict and judgment for plaintiff for $14,000. Defendant appealed.

*Errors assigned* were various rulings and instructions, quoting record.

*James Francis Ryan,* with him *J. J. K. Caskie,* for appellant.—The testimony as to the infection of plaintiff's foot should not have been submitted to the jury: McCrosson v. P. R. T. Co., 283 Pa. 492; Vorbnoff v. Machine Co., 286 Pa. 199; Albert v. P. R. T. Co., 252 Pa. 527; Kelly v. Coal Co., 272 Pa. 39.

*Stanley Folz,* of *Sundheim, Folz & Kun,* for appellee.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, March 14, 1927:

The accident that gave rise to this case happened August 29, 1924. Joseph Mudano, plaintiff, in the course of some work he was doing on a public highway, held upright a heavy manhole cover, which, being struck

by one of defendant's cars, fell on plaintiff's right heel, causing a compound fracture of the "os calcis" (the bone of the heel).

On the evidence at the trial under review, the questions of defendant's negligence and plaintiff's alleged contributory negligence were for the jury; hence it would serve no useful purpose to discuss those phases of the controversy. The real point before us concerns the legal sufficiency of plaintiff's expert medical testimony to sustain the verdict on which judgment was entered in his favor.

The right to recover a material portion of the damages sought by plaintiff depends on a determination of the question whether certain serious physical conditions of which he complained, with their accompanying pain, suffering, inconvenience and expense, were properly attributable to the injuries received by him at the time of the accident. Of course, plaintiff was obliged to prove that every harmful result, for which he claimed damages, arose out of defendant's negligence; whereas an independent cause to which the results here in question might be attributed, appeared by evidence produced in plaintiff's own case, as we shall show more in detail later on in this opinion. For the present, it is enough to state that, in December, 1925, more than 16 months after the accident, an ulcer formed on Mudano's heel, and this led to the serious physical conditions and harmful results which we have mentioned. Plaintiff alleges the ulcer came from a latent infection due to the original injury, while defendant points to expert evidence produced by its opponent to the effect that the ulcer was attributable to an entirely independent and very usual cause of such troubles,—a blister on the heel, brought about by an ill-fitting shoe.

Mudano, as a witness for himself, testified that the fall of the manhole cover "broke" the bone of the heel of his right foot "in five places"; that he was at first attended by Dr. Kinloch; that, after treatment for about

a month, this doctor continued massaging the foot for thirteen months, during which time plaintiff suffered considerable pain; that, "in December, 1925, an infection developed where the foot was broken," and that this new trouble was responsible for a series of operations, accompanied by much suffering and inconvenience. The operations were performed by Dr. Moxey, who rendered a bill amounting to $1,500. Plaintiff said that the last time Dr. Kinloch saw him was in December, 1925, and that he then had the sore on his heel; that two months had expired between the time that Dr. Kinloch had discharged him from the massage treatments and the time the sore developed on his heel; that, during these two months, he had no medical treatment; that Dr. Moxey first came in to examine him at the suggestion of his attorney, who was prosecuting the present claim against defendant, and that, when the infection developed, Dr. Moxey was again called upon, and has been the physician in charge of the case ever since. At the trial, plaintiff stated that his wounds were entirely healed, but he was obliged to wear a brace. In describing how the infection started, plaintiff said, "it began first by getting red, and then a dark coloring, then pus formed under it." When these symptoms developed, he again visited Dr. Kinloch, who told him the condition required an operation. Plaintiff then called on Dr. Moxey, who operated and drained out the pus. When asked the question whether, as a matter of fact, a blister had not at first formed on his heel at the spot which subsequently had to be operated on, plaintiff failed to give a responsive answer.

Dr. Kinloch testified that Mudano came under his observation September 30, 1924; that plaintiff was suffering at the time from a fracture of the right os calcis, a part of the bone being crushed; that he gave him proper treatment, and then massaged the injury several times a week until October 19, 1925; that he did not see plaintiff again until the latter part of December, 1925, and at

that time the leg showed evidence of acute infection. Mudano's next visit was in February, 1926, when Dr. Kinloch found that his patient "had been operated on"; that "he had several surgical wounds in the back of the leg," and "the heel and ankle were swollen and tender." When asked what caused the condition which the witness observed in December, 1925, he testified that "it came probably from abrasion on [plaintiff's] heel, from the shoe rubbing." Then this question was put: "That is the rubbing of his shoe heel caused a blister which became infected?" and the answer was, "Yes." When asked the question, "During the time that you treated him, during the whole 14 months from September, 1924, to October, 1925, was there any breaking of the skin of the heel of this man's foot?" The witness answered "No." He also said that, during the time in question, there was no evidence of infection or pus or other condition which led him to believe that an infection existed; that the first indication of infection he saw "came from the rubbing of [plaintiff's] shoe." He added, however, that "The persistent tenderness over the seat of fracture would make a man suspicious, possibly, of infection," but that he, as a matter of fact, "was not suspicious of infection," saying further, "I mean, I did not really think of infection over that seat of fracture until he came back with the infection; I never suspected any infection" (meaning, during the whole time the witness had treated plaintiff). Finally, in answer to the question, "Would you say, in your professional opinion, ......that the infection did come from the accident of 16 months before, or that it did come from the abrasion of his heel due to the rubbing of his shoe?" the witness said, "I think it is more probable that it came from the abrasion."

Dr. Moxey testified that the first examination he made of plaintiff was on May 19, 1925, nine months after the accident. He told of a tender and sore condition which he then found in the heel and which subsequent exam-

inations showed as a continuing trouble.   When he saw
plaintiff in January, 1926, the infection had "developed."
He operated on Mudano, January 9, 1926, and several
times thereafter.   When asked the question, "Do you say
that this infection came from the accident?" the reply
was, "No, sir, I do not say that it came from the acci-
dent; I say that, in my opinion, it is more probable that
it came from the accident than that it came from the
outside."   And when asked the question, "Would you
say that it did not come from an outside infection," the
witness replied, "I would not like to say that it did not
come from an outside infection."   A recess was taken
at this point, and, upon the reconvening of the court, the
doctor said that, "taking into consideration all the facts
of the case," in his opinion the infection came from the
accident.   This was followed by an extensive cross-ex-
amination in which the witness admitted that, at a
former trial, he had given some answers which might
seem inconsistent with his last stated conclusion, but he
endeavored to explain away these answers scientifically,
and said, "I have always been of opinion, and the clini-
cal course of the case is confirmation of the fact, that
there was in that os calcis at the time of the accident
some infection that remained latent until this open man-
ifestation later on."

The above is a fair summary of the salient points in
the testimony produced by Mudano, through himself and
his two medical experts, to show that the ulcerated con-
dition which developed in his heel, some 16 months after
the accident, was due to that occurrence.   Plaintiff was
obliged to prove by legally sufficient evidence that all
injuries for which he claimed damages were attributable
to the accident on which he based his claim against de-
fendant.   He was entitled to damages for the original
fracture of his heel, however, whether the subsequent
ulcerated condition could properly be attributed to that
cause or would have to be accounted as due to an inde-
pendent cause; but, in the latter event, obviously the

amount of the damages recoverable from defendant would be greatly reduced. This being the case, it becomes important to determine whether the evidence depended upon by plaintiff to show that the subsequent condition in question was due to the accident is sufficient in law to sustain a finding to that effect.

As stated in the preceding paragraph, the burden was on plaintiff to prove by legally sufficient evidence that all of the injuries for which he was claiming damages were properly attributable, in a medical sense, to the accident, and Mudano's own testimony does not help to determine this point. The testimony of the two physicians, delegated to speak for him in that regard, must be treated as governed by the rules applicable to the evidence of plaintiff himself; because, on the particular issue before us, he in effect said to the jury, "I do not possess the technical knowledge to tell you that the ulcerated condition of my heel came from the accident, but these doctors will do so for me." Therefore, on that issue, he spoke through his experts, not to detail facts but to tell the jurors what inference the established facts warranted; if, in thus speaking, his testimony was so conflicting regarding the proper inference to be drawn as to render either one of two inconsistent inferences possible of adoption, the adoption of the one or the other would be nothing more than a guess, and, under such circumstances, plaintiff fails to sustain the burden of proof which the law casts upon him.

While we have held in numerous cases that, generally speaking, where the testimony of a witness is contradictory, it is for the jury to reconcile such contradictions (see, for example, Danko v. Pitts. Rys. Co., 230 Pa. 295, 298), yet we have also held that where a plaintiff himself is the witness, and his uncorroborated testimony is so conflicting as to render it impossible to make an essential finding therefrom, it is proper for the court to instruct against plaintiff: Mulligan v. Lehigh Tract. Co., 241 Pa. 139, 140. In Ely v. Pittsburgh, C., C. & St. L.

Ry. Co., 158 Pa. 233, 238, where we ruled that contradictory testimony concerning plaintiff's alleged contributory negligence had to go to the jury to be reconciled, we said also: "Had the testimony referred to a subject as to which the burden of proof was on the plaintiff, the result might have been different, for the court is not entitled to submit evidence which would merely enable the jury to guess at a fact in favor of a party who is bound to prove it." In Zenzil v. D., L. & W. R. R. Co., 257 Pa. 473, 477, citing the Mulligan Case, we said: "The burden of proof was upon plaintiff to establish...... the fact......and as his own testimony......was so contradictory and conflicting as to present to the jury no basis for a finding except a mere guess, the nonsuit was properly granted." In Goater v. Klotz, 279 Pa. 392, 396, we said: "Where the burden of proof is upon the plaintiff to establish certain facts......and his testimony, or that of his witnesses, on the question, is so contradictory as to present to the jury no basis for a finding, except a mere conjecture, a nonsuit is properly entered......and this......is clearly recognized in ......Parker v. Matheson Motor Car Co. [241 Pa. 461, 467]." See also Bunting v. Golstein, 283 Pa. 356, 359. Finally, in Gausman v. Pearson Co., 284 Pa. 348, 353, we said: "Where an injury may be the result of one of two or more causes, for only one of which defendant is liable, the burden is on plaintiff to individuate that one, as [in fact] the proximate cause of his damage,...... otherwise there can be no recovery."

Here, a material fact which plaintiff sought to prove was that the infection necessitating the several operations performed by Dr. Moxey, with the accompanying pain, suffering, inconvenience and expense, all were due to the accident occasioned by defendant's negligence, and not to another, independent, cause,—the blister on his heel,—evidence of which he, plaintiff, brought into the case; or, to use a word employed in the opinion last above cited, as the case developed at trial, it became

necessary for plaintiff to "individuate" the real cause of his damage. This he undertook to do by expert opinion evidence. Unfortunately, however, the two experts whom he delegated to carry the burden of proof for him disagreed in their conclusions, as shown by the excerpts from their testimony quoted above.

In cases where the subject covered by opinion evidence is on the border line between the domain of general and special knowledge, as, for example, where the value of a thing or of a service is the point at issue, the jurors, as men of affairs, may draw their own inferences from the established facts and either accept or reject the guidance of experts; but where, as here, the point before them requires special scientific knowledge for its solution, and, for that reason, the jurors are dependent on expert evidence to enable them intelligently to reach a decision, if the plaintiff, for the purpose of proving what he claims to be the efficient cause of particular results for which he is claiming damages, undertakes to speak by an expert on that issue, because it requires scientific knowledge for its elucidation, the testimony of the witness produced for that purpose must be reasonably consistent, and unequivocal: Vorbnoff v. Mesta Machine Co., 286 Pa. 199, 205, 206. If plaintiff calls more than one expert, there must be no absolute contradiction in their essential conclusions; for, since he, carrying the burden of proof, is asking that a certain definite scientific inference shall be drawn from given facts, and is producing witnesses, accredited by him as specially qualified to draw deductions from such facts, to inform the jury, on his behalf, as to what that inference should be, it is his duty to furnish consistent, and not inconsistent, advice, —otherwise the jury would be confused rather than instructed. Lacking scientific knowledge themselves, the members of the jury, in a case like the present, when called upon to determine whether a particular physical condition is the result of the accident (or of another cause, unrelated thereto), are not obliged to choose be-

tween contradictory advice tendered by plaintiff's medical experts; the law imposes no such duty on jurors,—though it does at times require them to determine whether to accept the advice of experts on one side or the other of a case.

In the present instance, we are not dealing with the rules of evidence applicable to ordinary witnesses, or to witnesses called, as peculiarly qualified observers, to relate facts from which the jury may, unaided, draw its own inferences and conclusions, nor are we dealing with those rules which control the testimony of what may be termed quasi scientific witnesses; we are here concerned only with the legal principles which govern the evidence of medical experts, produced by one fixed with the burden of proof, to state purely scientific deductions from given facts. Moreover, we do not mean, by anything said in this opinion, to intimate that, whenever a litigant calls experts and they disagree, this necessarily destroys his case on the particular point of disagreement; what we do mean is that, when plaintiff has the burden of proof on an issue of fact which goes to the essence of any material part of his case, and he selects scientific experts to speak for him, because the point at issue can be solved only in that way, such experts are peculiarly his mouthpiece,—they take his place and, so far as the rule laid down in the line of cases first mentioned in this opinion is concerned, may be viewed as though they collectively were the plaintiff himself. If, after being equally accredited by plaintiff, witnesses of the character just described so vitally disagree on essential points as to neutralize each other's opinion evidence, their sponsor has not borne the burden of proof which the law casts upon him, and to that extent has failed to make out his case,—though, in our opinion, minor points of difference between such witnesses should not be thus viewed.

Returning to the case before us on appeal, here one of plaintiff's two experts, Dr. Moxey, who did not see

Mudano for months following the accident, nor until some days subsequent to the development of the ulcerated condition on his heel, after at first, saying in effect, that he could not satisfactorily express an opinion concerning the cause of that condition, attributed it to the accident. On the other hand, Dr. Kinloch, plaintiff's other expert, who originally attended Mudano and who was also the first to see the ulcerated condition from which he subsequently suffered, failed to sustain plaintiff's contention that it was due to the accident. On the contrary, he plainly said that, in his professional opinion, the condition under investigation was probably due to a cause other than the accident, thus neutralizing the opinion of the first-named expert.

Prior to McCrosson v. Phila. R. T. Co., 283 Pa. 492, 495-6, the word "probable" or such a phrase as "most probable," when used by medical experts in testifying that a certain result came from an assigned cause, seems to have passed muster in the courts, but in that case, and in Vorbnoff v. Mesta Machine Co., 286 Pa. 199, 205, 206, we said that, when a plaintiff depended on expert medical testimony, "the witness would have to testify, not that the condition of plaintiff might have, or even probably did, come from the accident, but that, in his professional opinion, the result in question came from the cause alleged." It must be remembered, however, that this rule was laid down to govern the kind or standard of evidence required of one bearing the burden of proof; such being its purpose, the rule applies only when the evidence of the expert is viewed from that standpoint, and it does not govern a situation like that now before us. Here, Dr. Moxey, at one point in his testimony at least, used the word "probable," in stating that in his opinion, "it is more probable that [the infection] came from the accident than that it came from the outside," and Dr. Kinloch, after asserting that, in his opinion, the infection came from the outside, or, as he said, from the blister on plaintiff's heel, caused by the rubbing of

his shoe, later on employed the phrase "more probable," in stating that it came from that cause. Owing to the use of this word "probable" by Dr. Kinloch, perhaps his testimony might be held legally insufficient (under the rule laid down in the cases last referred to) to sustain a finding that the ulcerated condition of plaintiff's heel was in fact due to the cause assigned by this witness, if that fact was the point on which the instant case turned, if defendant was fixed with the burden of sustaining such an issue, and if the latter depended on the evidence of this witness for that purpose; but none of these contingencies faces us. The issue we have to consider is not whether the ulcerated condition of plaintiff's heel might properly be attributed to the cause assigned by Dr. Kinloch, but whether it was attributable to the accident. Moreover, Dr. Kinloch was not called by defendant,—he appeared as a witness for plaintiff. His testimony not only entirely failed to support the position which plaintiff was bound to sustain,—that the condition under investigation, with its attendant suffering, inconvenience and expense, was in fact attributable to the accident,—but it indicated that the condition in question was in all probability due to the blister on Mudano's heel. On this state of the evidence, with both of plaintiff's experts at times employing the word "probable," we hold that Dr. Kinloch's testimony had sufficient strength to neutralize that given by plaintiff's other expert, which, taking it as a whole, was none too strong in supporting the theory of plaintiff's case, even had such testimony stood alone, instead of being in opposition to that of Dr. Kinloch. This state of the evidence left plaintiff without legally competent proofs to sustain that part of the judgment in his favor which covers the award of damages for the results that may properly be accounted as due to, or growing out of, the ulcerated condition which developed on his heel 16 months after the accident; in short, the expert testimony relied on for that purpose lacked the consistency required of

proofs of this character when submitted by one in the position of plaintiff, and, hence, should not have been considered.

Defendant made a motion that all expert testimony in the case relating to the infection be stricken out, and the refusal of this motion is covered by an assignment of error. Had the testimony in question been eliminated, as it ought to have been, the jury would have had before it the question of damages for the original compound fracture of plaintiff's heel, with the attendant impairment, suffering, inconvenience and expense, without regard to the ulcer which subsequently developed, or the damages attributable thereto. The testimony of the experts, to the extent indicated, should have been withdrawn from the jury and the case submitted under proper instructions to ignore the ulcerated condition of the heel, as this was not shown, by legally sufficient evidence, to be due to the accident (see opinion of Judge TAFT in Ewing v. Goode, 78 Fed. 442) ; since that course was not pursued, the judgment, in its present amount, cannot stand.

The judgment is reversed, and it is ordered that the record be returned to the court below with directions to reinstate the motion for a new trial and reduce the verdict in such a reasonable amount as in its opinion will make due allowance for the improper award of damages contained therein, that tribunal's order to this effect to contain an option to both plaintiff and defendant to accept the reduction or a new trial; if the diminution of verdict is accepted by both parties, the court below may discharge the rule for a new trial and enter judgment in plaintiff's favor, otherwise the rule must be made absolute.