# Knopf, Appellant, *v.* Delaware County.

*Negligence—Bridges—Defective county bridge—Repairs—Independent contractor — Supervision — Hidden defect—Inspection—Evidence—Notice.*

1. Where an independent contractor engaged in making an alteration in a county bridge, replaces a plate which he discovers to be defective, and does not notify the county authorities thereof, the county will not be responsible for a death resulting from a break in the plate.

2. If the county had actually retained supervision of the work while it was in progress, or accepted it with full knowledge of the facts, the county would have been liable for the death.

3. The county is regarded as having notice of the defect only where such notice is given to, or acquired by, an officer or agent whose duty it is to report or make provision for the correction of the defect, or to see to the making of repairs.

4. Information imparted to ordinary employees, or even acquired by a county officer in his individual capacity, is not sufficient to bind the county.

5. The county was required to make proper inspection, but only to use such methods as an ordinarily prudent person would adopt.

6. It was not required to remove the flooring of the bridge unless there was something to arouse suspicion of a latent defect in a plate.

7. The lack of the competency of the county engineer cannot be considered merely from his failure to discover the hidden defect, and especially where the county commissioners testify that he was considered qualified to take charge of structures in place, although perhaps not qualified to build bridges.

8. A county cannot be held liable for a death caused by a latent defect of a plate in a bridge, where five expert witnesses called by plaintiff, differ as to the proper method of inspection and furnish the jury no safe guide to a decision as to whether the county authorities failed to exercise proper care under the circumstances.

Argued January 9, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 15, Jan. T., 1928, by plaintiff, from judgment of C. P. Delaware Co., Sept. T., 1921, No. 561, for defendant n. o. v., in case of Hilda Knopf v. Delaware County. Affirmed.

Trespass for death of plaintiff's husband. Before BARNETT, P. J., specially presiding.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff. Judgment for defendant n. o. v. Plaintiff appealed.

*Error assigned* was judgment, quoting record.

*Michael D. Hayes,* with him *Albert Dutton MacDade* and *Wilson & McAdams,* for appellant.—Defendant had actual notice: Johnson v. Phila., 236 Pa. 510; First Presbyterian Congregation v. Smith, 163 Pa. 561; Sipe v. R. R., 222 Pa. 400; Stubbs v. Light Co., 84 Pa. Superior Ct. 1.

Even though defect was latent, there was a proper method of inspection which, if followed in good faith, would have resulted in the discovery of the defect.

No proper inspection was made by defendant: McGlinn v. Dervin, 260 Pa. 414; Holzheimer v. Lit, 262 Pa. 150.

*Albert J. Williams,* for appellee.—Plaintiff failed to prove the defect could have been discovered by a reasonable inspection: Mulligan v. Traction Co., 241 Pa. 139; Zenzil v. R. R., 257 Pa. 473; Mudano v. Transit Co., 289 Pa. 51.

Plaintiff did not prove defendant had actual notice: Ardesco Oil Co. v. Gilson, 63 Pa. 146; Anderson v. Mfg. Co., 207 Pa. 106; Painter v. Pittsburgh, 46 Pa. 213.

OPINION BY MR. JUSTICE SADLER, January 30, 1928:

Morris Knopf, husband of plaintiff, was killed on September 10, 1921, by reason of the collapse of a bridge under the control of the County of Delaware, defendant. The structure, built in 1886, was damaged in 1910 when a boat came in contact with it. Repairs were then made by a contractor, Ward, and his subcontractor, Headley. Employees of the latter removed one of the gusset plates for straightening, and, after doing this, refastened it in place. In the course of their work a crack was discovered in the iron, but they did not report this fact to the county commissioners. The plate was bolted into position, and covered by angle irons used as stiffeners, which entirely concealed the break, and thereafter the bridge was continuously used by the traveling public. In 1920 it was thoroughly inspected by the county engineer, who suggested certain repairs, which were made, but the concealed defect in the plate was not discovered though careful examination of the structure followed.

Due to an unusual crowding on the span in question, it gave way, causing the deceased to be thrown into the water and drowned. One Travers was also killed, and, in an action of trespass instituted by his wife against the county, a nonsuit was entered. On appeal, the judgment of the court was affirmed, and in the opinion then filed the facts involved in the controversy now before us are detailed (Travers v. Delaware Co., 280 Pa. 335) and need not be repeated here. In the instant case, certain additional testimony tending to show liability was

introduced, which it is claimed makes possible a finding for the present plaintiff.    The questions involved were submitted to the jury, which found in her favor, but judgment was later entered non obstante veredicto by the trial judge, and this appeal followed.

It is contended that in this instance evidence was produced to show that the county had actual notice of the crack in the plate found in 1910, or, if not, it could have been discovered by competent inspectors, and, therefore, the municipality was responsible for the negligence of its officers in failing to locate it and make the necessary repairs.    Considering the testimony of the plaintiff in its most favorable light, as we must in this proceeding, it is clear that there was a fracture in the gusset plate, which was replaced by Cooper and Pilger, employees of Headley, in 1910,—a date inadvertently fixed as 1896 in the report of the Travers Case,—that it was rebolted to the girder, and completely covered with the stiffening angles.    Whatever the exact location, the break itself was within the line of the covering iron-work.

The fact that it existed was doubtless known to the employees, who at that time replaced it, but there was no evidence that this fact was brought to the attention of the county authorities.    It was for the court to say whether the parties then engaged in making the alterations were independent contractors: Thomas v. Ry. Co., 191 Pa. 361.    If they were, the employer was not responsible for their act in replacing the plate, if that conduct constituted negligence.    Had the county actually retained supervision of the work while it was in progress, or accepted it with full knowledge of the facts, a different situation would be presented: First Presbyterian Congregation v. Smith, 163 Pa. 561; Johnson Co. v. Phila., 236 Pa. 510; Stubbs v. Duquesne Light Co., 84 Pa. Superior Ct. 1.    But there was no evidence to show such direction, or that those employed were incompetent (Ardesco Oil Co. v. Gilson, 63 Pa. 146; Painter v. Pittsburgh, 46 Pa. 213), or that they conveyed to the

county commissioners information as to conditions found.

Knowledge by the employees of the independent contractor was not that of the municipality. It is regarded as having notice of a defect only where such is given to, or acquired by, any officer or agent whose duty it is to report, or make provision for the correction of the defect, or to see to the making of repairs: 43 C. J. 1056. Information imparted to ordinary employees, or even acquired by a municipal officer in his individual capacity is not sufficient to bind the county: Frazier v. Butler, 172 Pa. 407. Ward employed Headley to straighten the bent plate, and Pilger and Cooper were engaged by him to do the work. If they discovered a break in the iron they were under no obligation to report it to the county by whom they were not hired, and it is not to be charged, as a result, with actual notice of the conditions they found, unless the information was communicated to its officers. There was no evidence to show that it was, and it cannot be said any actual notice was proved.

The argument is made that, though the officials were not aware of the fracture, yet the latent flaw could have been discovered by competent inspection, and liability attached as a result. Attention was called in the Travers Case to the authorities defining the responsibility where hidden defects are the cause of the injury, and to those there cited may be added Lentz v. Allentown Bobbin Works, 291 Pa. 526. Witnesses were asked in the present case whether it would have been possible to discover evidences of a break if the planks forming the sidewalk of the bridge had been removed, and they stated that the top of the plate might have been thus made visible by sunlight or the use of a flash. The county was required to make proper inspection, but only to use such methods as an ordinarily prudent person would adopt: Ritz Carlton Co. v. Phila., 282 Pa. 301; Emery v. Pittsburgh, 275 Pa. 551; Dun-

can v. Phila., 173 Pa. 550. No witness testified that a
proper inspection required the removal of the flooring,
unless there was something to arouse suspicion, and,
under the facts presented, the jury could not have found
it was necessary in the present instance.

Nor is there any force in the objection that the official
county engineer, Yocum, was incompetent to make in-
spections to discover defects. The testimony of the com-
missioners was to the effect that, as he was not a grad-
uate designer of bridges, work of that character might
not have been committed to him, but that he was con-
sidered to be properly qualified to take complete charge
of the structures in place. No evidence was offered to
show Yocum was unfit to do the work committed to his
care, nor can such be properly inferred from his testi-
mony as to the inspection actually made. It will be no-
ticed that the court was not asked to call the attention
of the jury to the question of his competency. The lack
of it is not to be concluded merely from his failure to
discover the hidden fracture in the iron.

An effort was further made to show by qualified en-
gineers, as in the Travers Case, that a reasonable in-
spection of the bridge would have disclosed the crack in
the plate, and two additional witnesses were called,
Masters, an expert, as well as Kelso, a painter, the lat-
ter of whom testified that he had observed rust marks
prior to the accident. Christie, Chase and Masters,
three of the engineers who were examined, had not seen
the bridge, or the affected plate, prior to the trial. Wil-
son and Quinby, the latter called by defendant, had
made observations the day after the accident. Of the
four called by plaintiff, Wilson stated that had he in-
spected, he believed he would not have discovered the
crack. Christie testified it could have been found by
tapping the iron, but, when he attempted to make tests
on like construction, submitted for his examination, he
was unable to distinguish between broken and unbroken
plates, in the manner suggested. Chase suggested the

same method for locating trouble, but declined to make the experiment in court. Masters was of the opinion that the presence of rust would have shown a defect, but Wilson, another expert for the plaintiff, who examined the plate the day after the accident, found no rust. The marks testified to by Kelso, the painter, were not peculiar to the broken plate.

As was said by the learned court below in entering judgment for the defendant: "When five expert witnesses, called by the plaintiff to prove that the commissioners must have neglected their duty of inspection, because a competent inspection would have discovered the defect, cannot agree upon the proper method of inspection, when the theories of some as to what would probably be seen as indicative of defect, is contradicted by others who testify to what they actually saw, no safe guide is afforded a jury to a decision that those charged with the duty of inspection failed to exercise the care which ordinarily prudent men would be expected to exercise in the management of their own affairs."

Christie could not discover like defects by the "tapping" process, and Chase would not attempt it. Masters relied on the "rust" test, but plaintiff's witness Wilson negatived the premises on which his opinion was based. For a jury to find from this testimony that there was a neglect of duty in failing to discover the break would be at the most a mere conjecture: Mulligan v. Lehigh Traction Co., 241 Pa. 139; Zenzil v. D., L. & W. R. R., 257 Pa. 473. It is true that it is generally for the jury to reconcile contradictory statements of witnesses, yet when the plaintiff, speaking through his own experts, presents such conflicting views as to the proper inferences to be drawn from proven facts as to be irreconcilable, the adoption of one view or the other would be nothing more than a guess, and, under such circumstances, plaintiff fails to sustain the burden of proof which the law casts on him: Mudano v. P. R. T. Co., 289 Pa. 51.

A careful examination of the record presented fails to show any material difference between this case and the one presented in Travers v. Delaware Co., supra. No new facts were established which would justify a conclusion different from that reached in the former proceeding, as was properly decided below.

The judgment is affirmed.