Trotter to Use, *v.* Industrial Health, Accident & Life
Insurance Company, Appellant.

Argued October 24, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM,
BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*George J. Edwards, Jr.,* for appellant.

*Abraham Friedman,* for appellee.

OPINION BY PARKER, J., December 18, 1934:

Victor A. Trotter, on February 20, 1933, secured from the defendant a life insurance policy for $100 and died on August 4, 1933. An action in assumpsit was brought by David J. Phillips, assignee of the beneficiary, to recover the face of the policy. The defendant paid one-half of the policy and defended as to the balance, when the case was called for trial by a judge of the municipal court sitting without a jury. The policy provided: "This policy is in full immediate benefit unless the insured shall die of heart disease, consumption or nephritis within one year from the date of said policy; then the company shall only pay a sum equal to one-half the amount which would otherwise be paid."

The defendant alleged in its affidavit of defense by way of new matter that the insured died of "heart disease." This raises the only question in controversy. The defense presented was an affirmative one, and the burden was on the defendant to show that the death was due to "heart disease," a cause or risk specially excepted in the policy: Connell v. Met. Life Ins. Co., 16 Pa. Superior Ct. 520; Borgon v. J. Hancock M. L. Ins. Co., 99 Pa. Superior Ct. 377, 380; Bowers v. Great Eastern C. Co., 260 Pa. 147, 103 A. 536.

To establish its defense, the insurance company relied solely upon a certified copy of the certificate of the death of Victor A. Trotter as filed with the Bureau of Vital Statistics of the Department of Health of this Commonwealth. The certified copy offered in evidence was, in part, as follows: "The Cause of Death was as follows: Cerebral Embolism Aortitis (duration) 7 days, Contributory Rheumatic Fever (Secondary)

(duration) 20 years.'' In rebuttal the plaintiff offered a second certified copy of the same record and also a photostatic copy of the original certificate duly certified. The copies offered by plaintiff were certified at later dates than that offered by defendant and were as follows: ''The cause of death was as follows: Cerebral Embolism 82 1/56 (Duration) 7 days, Contributory, Rheumatic Fever (Secondary) Aortitis (duration) 20 years.''

The judge who tried the case in the court below, in an opinion filed, said with reference to the discrepancies in the copies: ''The questions with which we are concerned are, whether the death of the assured in the instant case was caused by heart disease, which is a cause of death excepted in the policy, and whether the burden of proof in that respect had been met by the defendant. The writer of this opinion, who was the trier of the facts, after carefully examining the certificates which were offered in evidence, concluded therefrom that the assured did not die of cerebral embolism and aortitis, with contributory (secondary) cause rheumatic fever, but that the cause of death was cerebral embolism and that rheumatic fever and aortitis were just contributing causes. We were influenced in so finding by the photostatic copy of the certificate, which is, after all, a correct and exact reproduction of the original; and there can be no doubt that the clerk or the person who made a copy of the original certificate for the defendant made a mistake.'' It is provided by the Act of June 7, 1915, P. L. 900, §21, as amended by the Act of April 28, 1927, P. L. 498 (later amended by Act of May 24, 1933, P. L. 979) (35 PS 471), which provides for the filing of records of births, deaths, and marriages, that any copy of a death certificate ''when properly certified by the State Registrar to be a true copy thereof, shall be prima facie evidence in all courts and places of the facts

therein stated.'' In Borgon v. J. Hancock M. L. Ins. Co., supra, in an opinion by Judge KELLER, we said (pp. 381, 384): ''As to proofs of death, it has been held in this State, time and again, that while they are admissible in evidence against the plaintiff the latter is not estopped at the trial by anything stated therein by physicians or others. Such statements are open to explanation or even to contradiction by the plaintiff ...... Where there is conflicting evidence as to whether the assured was in good or sound health at the time the policy was issued it is a question of fact for the jury ...... But if the act is valid in this respect and applies to actions based on private contract, the evidence so to be received is not conclusive but only *prima facie,* and is open to explanation and contradiction by the opposing party.''

The court below correctly held that the defendant did not meet the burden imposed upon it. The trial judge was fully warranted in accepting the photostatic copy as certified by the Bureau of Vital Statistics. This gave the cause of death as a cerebral embolism, rheumatic fever as contributory, and aortitis as secondary. The commonly accepted definition of aortitis is ''inflammation of the aorta.'' We have no reason to believe that aortitis is heart disease as that expression is used in the policy. The contract is to be construed most strongly against the insurance company which prepared the policy. Aortitis is not specially named among the exceptions, and unless the aorta is taken to be a part of the heart, which it is not in the common acceptation of the term, we may not infer without some expert proof that aortitis is heart disease. In addition, there is not any proof that aortitis was the primary cause of death. It seems clear to us that the defendant failed to meet the burden resting on it to make out the defense alleged.

Judgment of the lower court is affirmed.