## Donovan, Exrx., *v.* National Casualty Company, Appellant.

Argued September 27, 1945. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Howard R. Detweiler,* with him *Frank R. Ambler,* for appellant.

*David F. Maxwell,* with him *Edmonds, Obermayer & Rebmann,* for appellee.

OPINION BY BALDRIGE, P. J., October 24, 1945:

The executrix of the insured's will brought this suit to recover hospital and medical expenses allegedly due under a policy of insurance.

The National Casualty Company, appellant herein, on June 11, 1940, issued to Stacy Donovan a "Medical Attendance and Hospitalization Expense Policy" containing a rider stating that he previously suffered from prostatic hypertrophy and that he agreed "to relieve the Company from any liability for any loss sustained by me from *any disease of the urinary tract* or operation therefor . . ." (Italics supplied.)

The only defense to this claim is that the expenses incurred were the result of a disease of the urinary tract.

Dr. Francis G. Harrison, called by the plaintiff, testified at the trial that the insured came to him on October 9, 1943, complaining of a lump on his male organ of copulation, which proved to be melanotic sarcoma. A further examination showed that this primary lesion, or blue mole, had spread to the chest and lungs. Insured was hospitalized and underwent an operation consisting of the removal of one-third to one-half of the anterior portion of his male organ. Following this operation the insured died on December 22, 1943. Dr. Harrison said that the decedent suffered from a disease of the genital tract and not of the urinary tract. Later, on cross examination, he stated that the operation included the removal of a portion of the urethra and admitted that the organ affected is "referred to as a part of the genito-urinary tract."

The trial judge instructed the jury that if they decided the expenses for hospital and medical services

were incurred as a result of a disease of the urinary tract, the plaintiff could not recover. The jury returned a verdict for the plaintiff in the amount claimed.

It is contended in this appeal that followed, that the defendant's motion for judgment n. o. v. should have been granted because (1) the plaintiff's evidence shows that the expenses incurred were due to a disease of the urinary tract, and (2) plaintiff's medical testimony was so self-contradictory that under *Mudano v. Philadelphia Rapid Transit Company,* 289 Pa. 51, 137 A. 104, and similar cases, it cannot sustain a recovery.

The scope of the words "any disease of the urinary tract" as used in the rider is not clear under the circumstances present in this case. It must be borne in mind that it is stated in the rider that the insured had suffered from prostatic hypertrophy, which is a disease of the urinary tract. The question naturally arises whether or not it was against that character of a disease, and very probably other diseases affecting the urinary tract such as venereal diseases, cystitis, or nephritis, that the company sought to protect itself. The uncertainty as to the scope of this waiver precludes the holding as a matter of law that the amputation of a portion of the male organ resulting from a skin ailment was a disease of the urinary tract within the meaning of this policy.

Dr. Harrison stated that the pigmented growth, known as melanotic sarcoma or blue mole, was not confined to any part of the body. It is a skin affliction and may develop on the lip, face, arm, or anywhere on the body. In *Mutual Benefit Health and Accident Association v. J. Walter Blaylock,* 163 Miss. 567, 143 So. 406, 87 A. L. R. 679, it was held that a disease of the skin, which could be contracted on any part of the body, which appeared on the male organ of the insured, was not a disease of the male organ within a policy excluding "diseases of organs which are not common to both sexes."

In the instant case the urinary tract was unaffected primarily; it only became involved because it was included in the excision. It may be necessary to amputate a finger because of a skin or flesh condition, but that does not necessarily mean the bone therein is diseased. Likewise, it does not follow because the urethra was necessarily involved in this amputation, that the operation was caused or brought about by a "disease of the urinary tract." In the face of the ambiguity in the policy, the familiar principle, that a construction thereof must be given most favorable to the insured, applies: *Trotter to Use v. Industrial Health, Accident and Life Insurance Company,* 115 Pa. Superior Ct. 487, 490, 175 A. 884; *Stonsz v. The Equitable Life Assurance Society of U. S.,* 324 Pa. 97, 108, 187 A. 403. It was for the jury to decide, under proper instructions, whether a skin disease, which did not have its origin in the urinary tract and might appear on any part of the body, was meant by the parties to be within the provisions of the rider.

(2) It is clear that the plaintiff's expert medical testimony was not so self-contradictory as to fail to establish a prima facie case within the rule of the *Mudano* case, supra, or the other decisions relied upon by the appellant. In the *Mudano* case the medical witnesses flatly contradicted each other as to whether the ulcerated condition of plaintiff's heel was caused by the accident or other factors. Our Supreme Court held that such medical proof was irreconcilable and that the plaintiff failed to carry the burden imposed by the law upon him to take the case to the jury. That situation is not present in the instant case.

Dr. Harrison's testimony that he considered decedent's disease as one of the genital tract, not of the urinary tract, is entirely consistent with his later admission on cross examination that the organ affected is referred to as a part of the genito-urinary tract. There was no such flat contradiction or conflict of testimony on a fundamental issue as existed between the several

witnesses in the *Mudano* case and those that followed that principle.

The judgment of the court below is affirmed.