## Ripani *v.* Dittman et al., Appellants.

Argued April 22, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ.

126

*George H. Detweiler,* for appellants.—Haskins v. P.
R. R., 293 Pa. 537, puts the burden on the claimant of
showing that the witness Miller was not competent when
he made the written statement, otherwise it stands.

Under its physical facts and the medical testimony,
the case seems to fall within the rule as laid down in
Gausman v. Pearson Co., 284 Pa. 348, 352.

The medical testimony does not meet the requirements
to sustain an award in a workmen's compensation case:
Gausman v. Pearson Co., 284 Pa. 352; Vorbnoff v. Machine Co., 286 Pa. 199.

*T. Henry Walnut,* with him *Henry Temin,* for appellee, cited as to sufficiency of medical testimony: Fink
v. Sheldon A. & S. Co., 270 Pa. 476; McCrosson v. P.
R. T., 283 Pa. 492; Jones v. C. & I. Co., 285 Pa. 317;
Vorbnoff v. Machine Co., 286 Pa. 199, 206; Gibb v.
New Field, etc., Co., 287 Pa. 300, 301; Mudano v. P. R.
T., 289 Pa. 51, 62; Dewees v. Day, 291 Pa. 379, 382;
Johnston v. Construction Co., 292 Pa. 509, 515; Rushonosky v. Coal Co., 293 Pa. 150, 152.

Opinion by Mr. Justice Sadler, May 13, 1929:

Ripani, the decedent, aged 39, had been employed for
many years in outdoor work, and was in excellent health
prior to December 21, 1926. On that day he was engaged by Dittman, one of the defendants, the other being
an insurance carrier, to tend at night the boilers in his
place of business. Early the following morning the employee was found by the day engineer Miller seated on a
chair near the boilers which had been placed in his
charge the previous evening. He complained of a severe
headache, became unconscious, and was promptly removed to the Hahnemann Hospital, where he died a few
hours later. The records there kept showed he was suf-

fering from gas poisoning, and the coroner's jury found this to have been the cause of his death. Unfortunately, no autopsy was held, and this conclusion could not be established with absolute accuracy.

The deceased worked in the basement, which was divided by a partition at the northern end, having a large open passageway. The main boiler was beyond this wall, six or eight feet distant from the point where he was found, while a smaller one, three feet away, was located at the south of it, but on the 21st the fire in the latter was banked. During the night a window at the north was open several inches from both top and bottom, as were two at the far end of the basement on the south side. Nevertheless, Miller, who came to work at 6:45, found the room filled with gas when he arrived, and opened farther the windows to clear the atmosphere. The testimony of this witness was contradicted by a written statement given by him to an adjuster of the insurance company, which sets forth that he smelled no gas, but the declaration did not purport to give the entire conversation, and Miller swore positively to its presence. This raised a question as to his credibility for the referee to pass on, and the testimony of the witness as narrated on the stand was accepted as true. Biasi v. Lehigh C. & N. Co., 295 Pa. 80, where the prior opinion of the expert called was changed, when examined under oath, and his final statement adopted, controls the present situation rather than Haskins v. P. R. R. Co., 293 Pa. 537, cited by appellant.

When the case was heard before the referee, the facts above set forth were detailed, the hospital records introduced in evidence, and also the verdict of the coroner's jury. No physician was asked to express an opinion on the cause of death, but two experts for defendant testified that, if the windows were raised, as testified to, all gas would have escaped without harming one seated in the basement. No account was taken of the fact that the decedent may have been overcome while working about

128

the main boiler, and then returned to the chair where found, or that he may have been in the path of the gas as it sought an outlet from the windows on the south. The positive testimony of Miller, as to finding the room filled with gas when he arrived, was disregarded by these witnesses. To secure further light on the cause of death the referee called upon the expert of the compensation board, Dr. Carnett, as he had the right to do: Clemens v. Cornish, 295 Pa. 73. His statement was received and considered, however, without opportunity given for oral examination, which was improper in the face of objection (Seitzinger v. Fort Pitt Brewing Co., 294 Pa. 253), and, upon exceptions filed to the report of the referee awarding compensation, the board reopened the case so that the doctor could be questioned under oath, and any other testimony considered which the parties might desire to present.

A second hearing was had before the board, and Carnett was sworn and interrogated at great length. Two other experts, called by the respective parties, were also examined. The first named, in the absence of an autopsy, could not state absolutely the cause of death, but, assuming gas was found by Miller, as sworn to, and considering the previous physical condition of decedent, and the hospital records, having in mind that no other cause of the sudden collapse appeared, stated he was strongly of the opinion death was due to the cause asserted. Dr. Loefflad, called by claimant, gave this as his positive opinion, while Dr. Neubauer, for defendant, stated the record failed to definitely establish the cause of death. With this testimony before it, the board adopted the original findings of the referee, striking out, however, any conclusion based on the failure of defendant to disprove the cause of death alleged. This substitution of its own finding was permissible (Vorbnoff v. Mesta Machine Co., 286 Pa. 199), and it correctly held the burden of proof was on the plaintiff: Mauchline v. State Ins. Fund, 279 Pa. 524; Seitzinger v. Fort Pitt

Brewing Co., supra. After reviewing in detail the evidence, it held the liability of defendants properly established.

Upon appeal, the determination was reviewed by the court of common pleas. In view of the finding by the referee, adopted by the board, that the death was "entirely consistent with gas poisoning," which was the most "probable cause" of death, it was held that the conclusion was too indefinite upon which to base an award, and the record was remitted to the board to make a clearer statement, with the direction to hear further testimony, if deemed necessary,—a proper order under the circumstances: Driscoll v. McAlister Bros., 294 Pa. 169; Todd v. State Workmen's Ins. Fund, 295 Pa. 14. The referee, who originally heard the evidence, had retired from service, and the board itself passed upon the facts as already placed of record, neither party interested presenting additional witnesses. It considered the use of the word "probable," appearing in the first determination, in light of all the testimony offered, and amended the conclusion formerly filed, so that the finding read "that the cause of decedent's death was coal gas poisoning, which he suffered while in the course of his employment with the defendant." It struck out the words "probable cause," explaining that "the board's position was that the decedent came to his death 'most probably' (not in the sense of might have, but in the sense of actually did)." In so holding, it was justified by competent proof before it: Johnston v. Payne-Yost Co., 292 Pa. 509. This conclusion, subsequently approved by the court on appeal, is supported by the record, and will not, therefore, be disturbed by us: Zagwisky v. Lehigh Valley Coal Co., 295 Pa. 71.

It is now urged that the testimony of Dr. Carnett was too indefinite. As stated by him, in the absence of an autopsy, an expert could not say absolutely that gas caused the death, but, in view of the history of the case, and, assuming it was found in the basement, as testified

to by Miller, whose story was accepted by the referee as truthful, he was "strongly of the opinion" that it was the cause. In view of the fact that Ripani was in good physical condition on the evening of the seizure (Zelazny v. Seneca Coal Mining Co., 275 Pa. 397; Cybulski v. Baldwin Locomotive Works, 295 Pa. 61; Maurer v. South Penn Colleries Co., 295 Pa. 69), and no other cause of sudden collapse appeared (Clemens v. Cornish, supra), the expression of such opinion is sufficient, as held in Dewees v. Day, 291 Pa. 379, where practically the same words were used by claimant's expert witness. A declaration that the death may have resulted from the cause claimed (Rushonsky v. Lehigh Valley Coal Co., 293 Pa. 150; Gausman v. Pearson Co., 284 Pa. 348) is too indefinite to justify an award, but it is not necessary that the expert express absolute certainty: McCrosson v. P. R. T. Co., 283 Pa. 492; Miller v. Director General, 270 Pa. 330. He must state in effect that in his professional opinion the result was produced as contended for. What was said by Dr. Carnett meets the legal requirements, in view of the data on which it was based. Further, it will be noted that Dr. Loefflad declared positively "it is my opinion that this man's death was due to carbon-monoxide poisoning." It is true that Dr. Neubauer, called by defendants, was of the belief that the testimony was too indefinite, but it was for the board to determine the weight to be given the testimony, and its conclusion, favoring the claimant, was approved on appeal.

It is further argued that the opinions cannot be considered in view of the failure to make an express finding that there was gas in the basement, though such appears indirectly. No exception on this ground was made when the reports of the referee and the compensation board were filed. The attempt is now made to raise the question by assignments 1, 2 and 7, but an examination will show the first two are directed merely to the making of an award to plaintiff, and the last to the alleged lack of

evidence to show that the "probable cause" was gas poisoning. Disregarding the fact that the complaint was not properly presented below, it sufficiently appears that there was inferentially such a finding, upon which the award was based.

The conclusions reached by the board were justified by the evidence. Though the referee misstated the legal rule as to the burden of proof, and failed to make a definite finding as to what killed Ripani, the compensation board heard additional competent testimony, recognized the obligation of claimant to affirmatively prove her case, and concluded that gas was not only the probable, but the actual, cause of death. This determination was approved by the court on appeal, and we see no error justifying a reversal.

The judgment is affirmed.