Jones v. United Iron & Metal Company, Appellant.

Argued April 21, 1930.

Before TREX-
LER, P. J., KELLER, LINN, GAWTHROP, CUNNINGHAM,
BALDRIGE and GRAFF, JJ.

*James J. Burns, Jr.,* for appellant.—The burden of proof must be met by the claimant in a compensation case as by a plaintiff in an action at law: Knopf v. Delaware County, 292 Pa. 237; Flucker v. Carnegie Steel Co., 263 Pa. 113.

*Buell B. Whitehill* of *Jones, Whitehill & Lane,* and with him *John S. Miller,* for appellee.—A referee is not bound to the technical rules of evidence: Johnston v. Payne-Yost Construction Co., 292 Pa. 509; Seitzinger v. Fort Pitt Brewing Co., 294 Pa. 253.

Opinion by Cunningham, J., July 10, 1930:

On February 26, 1928, John E. Jones, while in the course of his employment with appellant, the United Iron and Metal Company, met with an accident; his widowed, and admittedly dependent, mother, Maria Jones, averring that his death on April 5, 1928, was attributable to the accident, claimed compensation from the employer. The referee made an award; the board adopted his findings; the court below, upon appeal to it, affirmed the action of the compensation authorities and entered the judgment from which the company now appeals.

There is no controversy in the testimony relative to the circumstances of the accident and the question here involved is whether the medical evidence was legally competent to support the findings of the referee that there was a causal connection between the accident and the death of the employe. There was undisputed evidence that for some time prior to the accident the employe had been afflicted with chronic myocarditis—

degeneration of the heart muscles—but his condition was not apparent to his fellow workmen; up to the time of the accident he had "the appearance of a strong, healthy workman" and was able to engage in heavy labor. Subsequent to the accident he was unable to do any work and the immediate cause of his death is described as an edema of the lungs, "one of the most common things that mark termination of myocarditis."

The theory of the claimant was that the pre-existing disease had been aggravated and its fatal termination accelerated by the accident. The fact that this employe had a chronic ailment which rendered him more susceptible to the injury sustained than an ordinary person would have been will not defeat his right to compensation: Clark v. Lehigh Valley Coal Co., 264 Pa. 529.

We adopt from the opinion of the court below the following description of the accident as fully sustained by competent testimony: "At the time thereof he was loading scrap iron into a gondola freight car. A cribbing of cross ties had been built up twelve feet high and about four feet from the side of the car. Iron beams twelve or fourteen feet long, each weighing about two hundred pounds, extended from the top of the cribbing to the car. By means of a crane the heavy scrap iron was taken to the top of the cribbing. Jones was on the cribbing pushing the iron over into the car, using a pinch-bar. One of the beams slipped off the car and dropped down. Jones fell or was thrown to the ground, a distance of about twelve feet. How he lit is not in evidence. He came out from between the cribbing and the car muttering and groaning, with his hand on his side and complaining that his back hurt. He was very pale. After sitting down a short while he went into the office and from there was taken home. His mother and another woman bathed his back and hips. In their testimony it appears that he was badly

bruised, there being marks on the lower part of his back extending down on the hip, and on his back below the shoulder blade was a red spot. These bruised places later became black and blue.''

Upon his arrival at home, Dr. McCombs was called and after a superficial examination suggested that another doctor be called as he was going away the following day. His statement (given at the second hearing) of the condition in which he found Jones reads: ''I saw the man and he complained of pains, soreness and pains through the body and hips and chest; I pressed him at first and thought he had some fractured ribs—he seemed pretty sore.'' Dr. McCombs had no further connection with the case until he was called immediately before the death of Jones. On the second day after the accident Dr. Truby saw Jones at his home and on two subsequent occasions the patient went to his office. He testified that Jones spoke of having had some accident but did not give him a detailed history of it; that he complained of pain ''around his chest and around the region of his heart;'' and that he diagnosed the case as one of chronic myocarditis. When interrogated with respect to his opinion of the effect, if any, of the accident he replied, ''I would say that the accident possibly may have helped—possibly made the patient more uncomfortable but outside of that I wouldn't say that the accident had anything to do with the death. I couldn't say that.''

Dr. Utts, another local physician, also attended Jones. His testimony was to the effect that he was not given an account of the accident but merely informed that the patient had met with one; that he was given a history of ''fainting, falling spells coming on quite rapidly;'' and that he found the patient ''in shock and collapse,'' with the rhythm of his heart affected and the heart sounds abnormal and indicative of a fatal termination. This witness, in reply to a question asking his opinion as to the cause of death,

stated that the patient had chronic myocarditis and added, "I don't think from my history of the case that his accident had anything to do with the death."

It should be observed in passing that Drs. Truby and Utts testified at the first hearing in the case and that the facts relative to the accident were not developed at that hearing, nor did either of them have knowledge of the details of the accident from the patient. At the next hearing the testimony of the witnesses who saw the accident and of Dr. McCombs was taken. In addition to the reference we have already made to his testimony, Dr. McCombs stated that he was called a few minutes before the patient's death; that Jones had had a fainting spell "and when I got to the house he was just about gone. ...... His chest was filling up with fluid at the time—a condition we frequently find in heart failure—what we call an edema of the lungs." When asked whether he thought the accident contributed to the death Dr. McCombs replied, "I really feel I could not express an opinion either way."

After the second hearing the referee, upon request of counsel for claimant and because he felt, as stated by him, that "the medical testimony of these three doctors was hardly sufficient to permit [him] to entirely disregard the injury," concluded to seek the advice of impartial medical experts and referred the record to Dr. Ray M. Alexander. Dr. W. H. Blakeslee was also called as an expert at the instance of the referee and answered hypothetical questions at the subsequent hearing. The referee had a right to adopt this procedure under the provisions of sections 420 and 422 of the amendatory Act of June 26, 1919, P. L. 642, 663, and the decisions of the Supreme Court in Seitzinger v. Ft. Pitt Brewing Co., 294 Pa. 253; Ripani v. Dittman, 297 Pa. 124; and Clemens v. Cornish, 295 Pa. 73. But, before the referee or board can legally base any findings upon facts ascertained from an independent investigation or upon the opinions of experts thus

selected and appointed, these expert witnesses must appear for examination and cross-examination, under oath, as in the case of any other witness. An opinion or report of a medical expert appointed by the referee or the board, who is not called as a witness and sworn and subjected to cross-examination, is not competent evidence upon which an award can be based: Seitzinger v. Ft. Pitt Brewing Co., supra, and Ripani v. Dittman, supra. Dr. Alexander was permitted, over objection, to express the opinion that from an examination of the record he believed there was "a connection between the accident and death of the decedent." This practice is not to be commended unless, as in the case of Kelly v. Watson Coal Co., 272 Pa. 39, the witness also states the facts he assumes to be true and which form the basis of his conclusion. The proper practice is to elicit the opinion by comprehensive hypothetical questions. This witness' testimony was considerably weakened by his statement that he answered in that way because he believed that one suffering "an injury to the extent that the record showed may have had injury enough to increase the myocarditis to such an extent that it would cause his death and there is a possibility that he had other injuries beside that." Then, too, the witness seems to have assumed that the iron beam fell upon the employe—a fact of which there is no evidence. The other expert witness, Dr. Blakeslee, was properly examined by the submission to him of a hypothetical question, framed by the referee and supplemented by counsel for defendant. His opinion, as expressed on his direct examination, was that "the most probable cause of decedent's death was the injury." On cross-examination he elaborated his conclusion by stating "we have here a chain of events associated with the heart condition which was precipitated and brought to a termination more quickly than would otherwise have occurred had there been no accident." Concluding his testimony, he was asked in

substance whether he thought the accident was severe enough to have caused the death "within a month's time" and replied, "that is my opinion." The final answers relieve us from the necessity of considering the meaning intended to be conveyed by the witness through the use of the words "most probable." "A declaration that the death may have resulted from the cause claimed (Rushonsky v. Lehigh Valley Coal Co., 293 Pa. 150; Gausman v. Pearson Co., 284 Pa. 348) is too indefinite to justify an award, but it is not necessary that the expert express absolute certainty: McCrosson v. P. R. T. Co., 283 Pa. 492; Miller v. Director General, 270 Pa. 330. He must state in effect that in his professional opinion the result was produced as contended for": Ripani v. Dittman, supra, and cases there cited. See also Vorbnoff v. Mesta Machine Co., 286 Pa. 199, 206. The medical testimony need not be given in any particular words: Johnston v. Payne-Yost Const. Co., 292 Pa. 509.

We think the testimony of Dr. Blakeslee, taken in connection with the data upon which it was based, measured up to the prescribed standard.

The defendant offered no testimony but, relying upon the fact that two of the attending physicians expressed the opinion that the accident had nothing to do with the death and the third declined to express any opinion, and, citing Mudano v. P. R. T., 289 Pa. 51, argued that the claimant had failed to sustain the burden of supporting her claim. We are not convinced that the case cited is controlling here. It was a negligence case in which the plaintiff had accidentally received a fracture of his heel. More than sixteen months after the accident an ulcer formed and he sought to recover damages not only for the original fracture but for the harmful results of the ulcer. The question was whether the subsequent condition was properly attributable to the injuries received at the time of the accident. The plaintiff called two expert

witnesses, one of whom testified that the ulcerated condition probably came from an abrasion on plaintiff's heel due to his shoe rubbing and causing a blister which became infected. The other expert testified that in his opinion the infection resulted from the accident. After referring to the fact that the burden was on plaintiff to prove by legally sufficient evidence that all of the injuries for which he was claiming damages were properly attributable in a medical sense to the accident and that plaintiff had undertaken to speak to the jury on this subject through his medical witnesses, the Supreme Court continued: "Therefore, on that issue, he spoke through his experts, not to detail facts but to tell the jurors what inference the established facts warranted; if, in thus speaking, his testimony was so conflicting regarding the proper inference to be drawn as to render either one of two inconsistent inferences possible of adoption, the adoption of the one or the other would be nothing more than a guess, and, under such circumstances, plaintiff fails to sustain the burden of proof which the law casts upon him."

In that case the experts were stating the inferences which, in their opinion, should be drawn from the given facts and each expert had the same facts from which to draw his deduction. In the case at bar neither Dr. Truby nor Dr. Utts, when they expressed their opinions, had any accurate knowledge of the circumstances of the accident or of the health, strength and appearance of Jones prior thereto. We are not persuaded, under such circumstances, that their opinions are to be contrasted with the opinions of the experts employed by the referee and who had as a basis for their deductions a comprehensive statement of all the facts. It is not every disagreement between experts called by a plaintiff or claimant that brings a case within the rule of the Mundano case. That rule seems to be that a finding should not be based upon the acceptance of

one or the other of two utterly inconsistent inferences drawn by experts from the same state of facts because the adoption of either, under such circumstances, would be a mere guess. Nor are we persuaded that a claimant in a compensation case is in a position entirely comparable with that of a plaintiff in an action for negligence. Section 422 of the Act of 1919 provides that neither the board nor the referee "shall be bound by the technical rules of evidence in conducting any hearing or investigation," but it is added that "all findings of fact shall be based only upon competent evidence." In Johnston v. Payne-Yost Const. Co., supra, it was said that "the rules of evidence are not applied in these cases with the same rigor as in litigation before a jury. ...... A strict or unduly technical application of the rules of evidence would at times defeat the chief purposes of the act,—which are to give compensation to employees injured by accidents in the course of their employment and to provide an administrative tribunal, less formal than a court, where such claims can be proved in as simple and direct a manner as is consistent with justice to both sides and a proper administration of the compensation law."

We are of opinion that this claim should not be defeated merely because some of the doctors in the case were of opinion, upon incomplete data, that the accident had nothing to do with the death of the employe and others were unwilling to testify with the same assurance as Dr. Blakeslee that his chronic heart condition was accelerated and brought to its termination more quickly than would otherwise have occurred had there been no accident (Richkowsky v. Lehigh Valley Coal Co., 276 Pa. 577), and from a careful examination of the record we are satisfied that there was sufficient legally competent evidence to support the findings of

the compensation authorities. The court below therefore committed no error in declining to disturb their action and the assignments must be overruled.

Judgment affirmed.