Kovach, Appellant, *v.* Union Drawn Steel Company and Aetna Life Insurance Company.

Argued May 5, 1930.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*Charles J. Margiotti,* and with him *Peter P. Jurchak,* for appellant, cited: Utzman v. Penna. Rubber Co. & Aetna Life Ins. Co., 96 Pa. Superior Ct. 463; Potter v. Claar, 289 Pa. 418.

*John M. Reed,* and with him *Harold F. Reed,* for appellee.—An appeal not perfected within the time provided by law will be quashed: Donley v. Semans, 260 Pa. 88; Mehaffey v. Fink, 13 Pa. Superior Ct. 534.

OPINION BY CUNNINGHAM, J., July 10, 1930:

This appeal is by the claimant in a workmen's compensation case; the referee and board made an award but the court below reversed their action and entered judgment in favor of the defendant and its intervening insurance carrier. Defendants filed a motion to quash the appeal upon the ground that it had not been perfected within the thirty days limited by section 427 of the amendatory Act of June 26, 1919, P. L. 642, 666, for the taking of an appeal from a judgment entered under our Workmen's Compensation Act. The final judgment in this case was entered March 26, 1929; the certiorari issued from the prothonotary's office of this court April 24th but the appeal was not perfected by filing the writ in the court below until April 26, 1929, thirty-one days after the entry of the judgment. In support of their motion counsel for defendants rely chiefly upon a recent order, at bar, by the Supreme Court, quashing the appeal in the case of Imbrie v. Christy et al., No. 10, March T., 1930, for the reason that it had not been "perfected within three months from the date of [the] judgment appealed from." It is argued that the Supreme Court by its action in that case modified the construction heretofore placed upon the Act of May 19, 1897, P. L. 67, namely, that the appeal must be perfected by filing the certiorari in the court below within the time limited for taking the appeal, or within a reasonable time thereafter. The language of the order in the Imbrie case, as finally entered, does not support their contention; it reads: "March 27, 1930, this appeal not having been perfected within three months from the date of the judgment ap-

pealed from or within a reasonable time thereafter, it is quashed. See Donley v. Semans, 260 Pa. 88."

In the Imbrie case the perfecting of the appeal was delayed for more than two and one-half months after the expiration of the time within which it was required to be taken; in Donley v. Semans, supra, the certiorari was issued within the six months' period applicable to that case but was not filed in the court below until more than one year had elapsed from the entry of the decree appealed from. In these cases, as in Mehaffey v. Fink, 13 Pa. Superior Ct. 534, the perfecting of the appeals was delayed for periods of time which were clearly unreasonable. In the case at bar the delay was only one day and the motion to quash is therefore overruled.

Passing then to the merits, the record shows that the appellant, Kovach, a resident of Sykesville, but employed for several months in defendant's mill at Beaver Falls, claimed compensation for total disability following an operation on September 6, 1926, for a strangulated hernia, which he alleged was due to an accidental strain suffered by him in the course of his employment with the Union Drawn Steel Company. Material facts, concerning which there was practically no controversy, were that the claimant was subjected to an unusual strain while at work in the mill on Thursday, September 2, 1926; that four days later his physician found he was suffering from a strangulated hernia, requiring an immediate and serious operation; and that at the time of the hearings before the referee he was totally disabled and would be obliged to undergo a secondary operation before resuming employment. The issue in the case was whether the injurious results were caused by the strain. Claimant testified that prior to the alleged accident he had been strong and healthy and never had a hernia. His account of the accident reads: "Q. How did you get hurt? A. ...... They had some kind of steel bars three men

to lift it up; when it was lifted up I was not high enough to put it in place and the two fellows dropped it and the steel bar was all left on me and whenever I hold myself I got ruptured. Whenever I tried to lift the steel bar I jumped up after it and I got ruptured at that time. ...... Q. Now what did you do after you say you got this pain or this rupture? A. I worked. I just took a rest after I told the boss I was sick and the boss went away and I kept on working but was sick and laid around and could not do the work; whenever this happened when I got ruptured I had to take a rest. Q. How long did you rest? A. A couple of minutes. Q. Did you get sick at your stomach? A. Yes I was shaking all over. Q. Did you sit down? A. No I just stand up and leaned against a bar."

He also testified that following the incident, which occurred about ten o'clock in the forenoon, he felt a small lump in his groin but continued at work for the remainder of the day although unable to do the usual amount; that he walked to his boarding house and that evening found the lump was "about as big as [his] fist;" that he was ill and unable to eat and remained at his boarding house the following day, Friday. On Saturday he went by train to Sykesville, walked from the station to his home, remained in bed on Sunday and on Monday called Dr. Shaffer, a general practitioner. Finding that he was suffering from a strangulated hernia, Dr. Shaffer had him removed to the hospital at DuBois and the operation was performed the same day by Dr. Patterson. The foreman of the employer testified that claimant, before leaving for his home, complained to him that he had "hurt himself when putting bars in the rack or taking them out of the rack."

This case arose prior to the amendment of April 13, 1927, P. L. 186, defining compensable hernia. The question therefore for the compensation authorities

was whether this was a "hernia of effort" caused, or materially aggravated, by an unusual strain, or a hernia of slow development from natural causes; in other words, whether it could "be related in any appreciable degree to [the] particular exciting cause" testified to by claimant: Skinner's Pennsylvania Workmen's Compensation Law, 2nd Ed., pp. 171-176. There was medical evidence to the effect that a hernia "is a diseased condition" and that there "must be weakness of the muscles or malformation of the inguinal canal in order that the hernia may develop." The finding of the compensation authorities was "that immediately prior to the accident the claimant was either suffering from a right inguinal hernia or was predisposed to such a hernia, and the strain suffered by him while in the course of his employment caused a strangulation of the right inguinal hernia necessitating an operation which resulted in total disability indefinite in duration."

Upon the making of the award by the referee and its affirmance by the board, defendants appealed to the common pleas. That court held that under the circumstances of this case it was necessary for the claimant to show by expert testimony "the causal connection between his alleged accident and his injury" and that there was not sufficient competent medical testimony to support the findings of the board. Defendants' exceptions were sustained and under the provisions of section 427 of the Act of 1919 (P. L. 666) the record was remitted to the board "for further hearing and determination." No additional testimony was taken but the board referred the record to Dr. J. B. Carnett as an impartial expert who "filed a report based upon his study of the testimony." Counsel on both sides waived the privilege of cross-examining Dr. Carnett. The board, in its second opinion and findings, stated that this report had been considered by it in disposing of the case and that under all the testimony "includ-

ing Dr. Carnett's report" it was of opinion that claimant was entitled to an award.

Upon the second appeal by defendants to the court below it was held that the board could not legally base any findings upon the report of Dr. Carnett and that, even if it could, the opinion expressed by him therein would not sustain the conclusions of the compensation authorities. The findings of fact, conclusions of law and award were reversed and a final judgment entered in favor of the defendants.

We had occasion to examine this matter of procedure in the case of Jones v. United Iron and Metal Co., 99 Pa. Superior Ct. 394, and there held, citing Seitzinger v. Ft. Pitt Brewing Co., 294 Pa. 253, and Ripani v. Dittman, 297 Pa. 124, that before the referee or board can legally base any findings upon facts ascertained from an independent investigation, or upon the opinions of experts selected and appointed by either of them, these expert witnesses must appear for examination and cross-examination, under oath, as in the case of any other witness, and that the proper practice is to elicit the opinions of such experts by hypothetical questions. The fact that in this particular case counsel waived the right to cross-examine Dr. Carnett is immaterial. The fundamental difficulty is that his report was not competent evidence upon which the board could base a finding and the court below was right in so holding. Here, as well as in the Jones case, the expert went far beyond "giving abstract scientific advice to enable the referee or the board to better understand the evidence before them" (Seitzinger v. Ft. Pitt Brewing Co., supra) and undertook to express an opinion upon the facts disclosed by the record as he interpreted it. We are not convinced however that this was a case in which the claimant was required to submit expert medical testimony in order to sustain an award, nor are we persuaded that there is not sufficient com-

petent evidence on this record, exclusive of the report of Dr. Carnett, to sustain the findings of the board.

We think the case at bar is within the principles stated in Utzman v. Penna. Rubber Co., and Aetna Life Insurance Co., 96 Pa. Superior Ct. 463. That was a hernia case in which this court held that the connection between the alleged cause and the injury resulting in the disability was not dependent upon the testimony of medical or expert witnesses. The only substantial distinction between that case and this is that the immediate symptoms which here followed the unusual strain were not as pronounced as those in the case cited. When we note however that the attending physician here was asked whether it was not extraordinary for a patient to have "a lump ...... in the right inguinal region the size of his fist, occurring after an alleged lift about ten o'clock the same day," and to be able to walk and travel as claimant did for several days, and replied, "I would say in his case that it is perfectly all right ...... because in his case it was a mesentery hernia and not an intestinal hernia," the distinction becomes of little importance. The testimony of the attending physician, with respect to the nature of the hernia, was corroborated by the testimony of the operating surgeon. One of the physicians called by defendants, after expressing the opinion that claimant "had an old hernial condition," stated in answer to a question by the referee that, "if the testimony is to be believed," the accident described by the claimant must have aggravated his condition "before it brought this down on him." Another of defendants' medical witnesses stated that he believed the hernia was "of recent origin." After a review of the entire record and considering all that was said in Utzman v. Penna. Rubber Co. and Aetna Life Ins. Co., supra, we are of opinion that there was sufficient legally competent evidence, exclusive of Dr. Carnett's

report, to support the award, and the assignments of error are accordingly sustained.

The judgment is reversed and the record remitted to the court below with instructions to enter judgment in favor of the claimant for the amount stated in the award.