## Plunkett, Appellant, v. Pittsburgh Railways Co.

Argued April 29, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cunningham, Baldrige, Stadtfeld and Parker, JJ.

*John Duggan, Jr.*, and with him *Benjamin L. Steinberg,* for appellant.

*William A. Challener,* and with him *J. R. McNary,* for appellee.

Opinion by Baldrige, J., July 14, 1932:

This suit is the result of an accident on December 8, 1924. The verdict was in the sum of $1,250, and the plaintiff appealed.

Catherine Plunkett, the appellant, was a passenger on one of defendant's cars. According to her testimony, the car came to a stop at a street intersection, and as she was stepping off, it suddenly started with

a violent jerk and she was thrown to the ground, sustaining injuries to her ankle, knee, hip, back and neck.

The assignments of error go to the ruling of the court that the plaintiff failed to sustain the burden of proving injury other than to her ankle and knee.

According to the story told by Mrs. Plunkett, she was assisted to her feet after her fall and then walked a short distance to the place of her employment, where she remained that day, although experiencing pain in the injured parts of her body. On her return home, hot applications were placed on her leg and she went to bed. The following day, although the pain continued, she went to work, but on the day thereafter she remained in bed and was suffering from various injuries to her back and neck. She continued to work, except the one day, until the 5th of January, when she was no longer able, owing to her injuries, to perform her duties. Her mother testified that on the evening the daughter returned home after the accident, she walked with difficulty, her ankle was badly swollen, and the second day thereafter, when she remained in bed, her back and neck were affected; that she attempted to relieve her daughter by bathing her injuries with arnica and using hot applications. Other witnesses, who saw her, were called, and testified not only to the injuries to her leg and ankle, but also to the condition of her arm, neck and back.

A number of doctors were called by the plaintiff. The first, Dr. Scheffer, testified that she consulted him on December 9th and complained of her ankle and left foot. His examination was confined to that part of her body. Toward the latter part of the six-weeks' period he attended her, she told him of muscular pain in her back, which he located opposite her sacro-iliac joint. He made no examination of this locality, nor did he suggest any treatment for that condition, but recommended her to consult Dr. Wallace, an orthopedic surgeon. Dr. Wallace testified that the patient com-

plained of pain in her left leg from ankle to hip. His examination, and a number of treatments he gave her, were confined to her knee and ankle. According to his recollection, no complaint was made to him about pain in her back or neck. Mrs. Plunkett testified that Dr. Wallace's assistant examined her back and sent her to have X-rays taken of her knee by Dr. McCullough, who examined her back, ordered her knee to be baked, and instructed her to wear a stiff corset. The pain in her back and neck continued, and on June 5th she went to the Allegheny General Hospital, under the care of Dr. Steele, who, according to his testimony, saw the plaintiff first on May 25th. She complained to him of her head—that she was able to hold it only one way, and was unable to twist her spine. From an examination he made, he discovered that she had marked limitation of motion in the dorsal and lumbar regions of the spine, with an enlargement over the left thigh, due to a fatty tumor. Her left sacro-iliac and hip were tender and there was marked hamstring spasm in both legs. The entire spine was rigid and relaxed with difficulty. Dr. Steele stated that, in his professional opinion, at the time he saw her, her condition was due to infection rather than injury; that the fall would not have caused the injury to the spine. He testified, in part, as follows: "Q. In your professional opinion, a woman of her weight being thrown from the top step of a street car down on to a hard surface such as a brick street, in your professional opinion, would that produce an injury to her spine such as she complains of? A. Well, I could not say whether it did or did not. The history I had of the fall, I would not think it would cause this condition. This condition, in my opinion, was caused more by infection. She could have a secondary infection come in on top of any injury, or an injury aggravates a secondary infection, but as far as the injury causing this condition, I am unable to say. Q. I understand you to say

you don't know? A. I don't know. The only thing I know is what she had on my examination." Cross-examination: "Q. Doctor, if I understand you correctly, with regard to this torticollis or wry-neck, it was not the result of injury but by infection? A. Yes, sir." Redirect: "Q. Do I understand you to say, doctor, that the injury does not bring about infection under any circumstances? A. Yes, sir, injury does not cause infection. You asked me if it caused infection and I said no." Dr. Ralston testified that he saw the plaintiff on February 6, 1926, and found the muscles of her neck affected, which drew her chin and head down; that she was suffering pain in her back, which he attributed to a sacro-iliac joint injury. His opinion was that her condition was due to the fall from the car. Dr. O'Connor, who examined the plaintiff a short time prior to the trial, and found her suffering in different parts of her body, as testified to by Dr. Ralston, gave, as his expert opinion, that her condition, at the time of his examination, was due to the injuries she received on December 8, 1924.

Owing to the conflict of testimony of the expert witnesses called by the plaintiff as to the cause of her injuries, the lower court excluded from the consideration of the jury the injuries other than those to her knee and ankle, under the authority of Mudano v. P. R. T. Co., 289 Pa. 51. In that case, the plaintiff, on August 29, 1924, sustained a compound fracture of the right heel. Sixteen months thereafter, an ulcer formed on the heel, which the plaintiff alleged came from a latent infection due to the original injury, while the defendant maintained that the ulcer was attributable to a blister on the heel brought about by an ill-fitting shoe. The plaintiff called two expert witnesses, one of whom testified that the ulcerated condition probably came from the abrasion on his heel, due to his shoe rubbing and causing a blister which became infected, and the other expert testified that, in his opinion, the infection

resulted from the accident. The court held that, as the plaintiff spoke through his experts, and their testimony was so conflicting regarding the proper inference to be drawn, the adoption of one or the other theory would be nothing more than a! guess, and, under such circumstances, the plaintiff failed to sustain the burden of proof as required by law.

Between the Mudano case and the one at bar, there is the essential difference that, in the former, the plaintiff depended solely on: medical experts who disagreed on the vital issue in the case; in the present instance, the plaintiff was not required to rely alone on expert witnesses, as she produced sufficient competent proof to establish a case independent of their testimony. Where there is evidence other than conflicting medical testimony, the plaintiff's right to recover is not defeated: London Guar. & Acc. Co. v. Leefson, 37 Fed. (2) 488; Jones v. United Iron & Metal Co., 99 Pa. Superior Ct. 394.

To the lay mind, the injuries complained of could very naturally and reasonably follow from such a severe shock to the system as the plaintiff described she experienced. For, if one in good health, as the plaintiff was prior to the accident, has a fall and immediately thereafter has persistent pains and tenderness not formerly experienced in parts of the body that would naturally be affected by the fall, it is reasonable to infer that the injuries were the natural result of the accident, and the jury would have been warranted in so concluding.

Judgment is reversed and a new trial granted.