## Silsley v. Pittsburgh Coal Company

*Samuel Krimsly,* for claimant.
*Howard Y. Crossland,* for defendant.

MONTGOMERY, J., January 9, 1947.—Raymond Sils-
ley, claimant, was an employe of the Pittsburgh Coal
Company as a millwright prior to February 17, 1942,
on which date he sustained in the course of his em-
ployment a serious injury to his right thigh and leg
for which he was treated by Drs. Weil and Kuehner,
and for which he was confined in the Mercy Hospital
from February 17, 1942, until July 8, 1942. Under
an agreement he was paid compensation to and includ-
ing November 1, 1942, he having returned to work on
November 2, 1942.

Prior to the accident claimant made inspections of
all the machinery in the plant of defendant, prepared
reports concerning the repair of same, and performed
certain manual acts in the preparation of the machines
for operation and in the repair of same. After his
return to work on November 2, 1942, there is little
doubt that the only services he performed were those
in connection with the preparation of the reports, it
being impossible for him, on account of his remaining
disability from the accident, to perform any duties

requiring manual effort. He continued in the employ of defendant until December 1, 1943, when he was obliged to quit altogether, being totally disabled, and he has not been able to work since. In September 1944 defendant arranged for additional hospitalization for claimant, and he remained in the hospital for a two-week period. Dr. Harold G. Kuehner, who had treated claimant originally, and who testified for defendant, described claimant's injuries as follows:

"Severe crush of the right thigh, complete avulsion of the whole posterior lateral skin of the thigh, and severe crushing of the thigh muscles, from which developed a gas bacillus infection of extreme severity; skin grafting was required on several occasions, and long periods of healing. At the time of admission to the hospital he had an unrecognized diabetes and chronic cholecystitis with stones, some evidence of cardiac hypertrophy that had coronary spasms. When he left the hospital on July 8, 1942, he still had disability from the above causes, and again on August 28, 1944, when he returned for a check-up. When he was discharged on September 8, 1944, he still had pain in the muscles of his leg in the area of the scar; he had contracture of the adductor muscles of the quadriceps muscles. He still had gall stones and diabetes, although the diabetes was in good control."

It was Dr. Kuehner's opinion that at the time he returned to work on November 1, 1942, claimant could not do the things he had formerly done, but only lighter tasks. Dr. Kuehner testified that the disability existing on November 2, 1942, was due to an aggravation of claimant's disorders rather than solely from the injury to the leg sustained by the accident. Dr. Kuehner also testified that the disability to the leg became progressively worse after he returned to work, and that he had a definite limp and high tenderness in various spots on the scar; also that on November 1, 1942, claimant was still a sick man, that his disability was

partially, if not totally, caused by the accident on February 17, 1942.

Dr. Irwin M. Pochapin, who was not called upon to examine claimant until October 12, 1944, after reviewing the history of the case, and in detail giving the results of his examination, stated:

". . . His present disability, which has become total and permanent since December 1, 1943, has been precipitated by the accident of February 17, 1942, and the subsequent complications. . . . It is my professional opinion that the severity of the trauma to the right thigh caused by the accident, the resulting shock, and the following complication of the gas bacillus gangrene developing, the wound was definitely and permanently aggravated, if it has not precipitated the subsequent and the present coronary, myocardial and hypertensive developments. . . . Claimant is totally and permanently disabled from engaging in any gainful occupation. This disability resulted directly from the injuries sustained in the accident of February 17, 1942."

Thus we have the picture of a man who returned to work still a sick man, able to perform but little of his previous duties, whose condition both directly in the area of the injured part, and indirectly in the aggravation of the other ailments existing in a dormant or inactive state at the time of the accident, progressively getting worse, resulted in total disability.

The case was presented to the board upon the petition of claimant to set aside a final receipt which he had presented to him sometime after November 10, 1942, which was dated November 10, 1942, and which had attached to it a check for the final payment of compensation due him under the agreement up to the date on which he returned to work. The check was dated the same date as the receipt, and was endorsed and cashed by him about December 19, 1942, the receipt itself being executed sometime between the date of

receipt of it and the date of cashing the check. Both the receipt and the check stated that they were for compensation to November 1, 1942, inclusive. The petition to set aside the final receipt was sworn to by claimant on October 30, 1944, was mailed, properly addressed, to the board at Harrisburg, Pa., from Pittsburgh on November 2, 1944, and was received by the board at Harrisburg on November 3, 1944. It stated as the grounds for the petition that "at the time of signing the final receipt, the full extent of my injury was unknown. I am totally disabled".

The petition was resisted by defendant company: First, because it was not filed "within two years from the date to which payment is made as evidenced by such final receipt", as required by section 434 of The Workmen's Compensation Act of June 4, 1937, P. L. 1552, as amended by the Act of June 21, 1939, P. L. 520, 77 PS §1001; and, second, because "the petition is not based upon a mistake of law or fact, nor upon fraud, coercion or other improper conduct on the part of defendant company". The referee found that at the time the receipt was signed, claimant was totally disabled. The board found further that defendant was guilty of improper conduct in securing the final receipt. This it had a right to do even though the petition to set it aside did not set forth improper conduct of the employer as a ground for the petition (Szymanski v. Culmerville Coal Co. et al., 141 Pa. Superior Ct. 303), providing there was sufficient evidence to justify such a finding. The evidence on this point, wherein claimant testified he had a conversation with Mr. Burgesser, defendant's superintendent, and was asked to sign the receipt in the following manner, reads: "Go ahead and sign it. That is just a formality. It doesn't mean anything." And also the statement of defendant's Dr. Weil, quoted by claimant, is as follows: "I asked him if I go to work and I can't stand it, what am I going to do? 'He said, I will put you

back on compensation and take care of you.' " Defendant questions the admissibility of this statement of Dr. Weil since he was deceased at the time of the hearing. However, we believe that it was properly admitted since statements made by a person in the regular course of his business or professional duty are competent after his death, if made on his own knowledge and at or near the time the act was performed: Henry on Pennsylvania Trial Evidence, 3rd ed., sec. 277. Dr. Weil was the doctor for the company, and the statement was made in the performance of his professional duties as such. It was admissible at least to show the uncertainty of claimant's recovery shortly before he was requested to sign the final receipt.

Considering the circumstances present, the uncertainty of claimant's ability to perform his duties, the limitation still present in the use of his leg, the continuing treatments for his diabetes, gall stones and heart condition, the fact that he was not performing any of his manual duties, it would appear that the method adopted by defendant employer in soliciting a final receipt so soon is in itself evidence of improper conduct: Schrein v. Fleischmann's Vienna Model Bakery, Inc., 148 Pa. Superior Ct. 155, 24 A.(2d) 661, wherein the court said (p. 158) : ". . . Where there is a serious dispute on the question of a causal connection between the injury and an existing disability, an employer, in all fairness, should petition for a terminatio of the agreement . . ." We are likewise satisfied that under the circumstances of the present case, the fair thing for defendant to have done would have been to wait until the ultimate results of defendant's injuries became more apparent before asking him to sign a final receipt, and in view of the case immediately preceding, we are of the opinion that there was sufficient evidence to support the board's finding that there was improper conduct on the part of defendant in securing the execution of the final receipt.

The setting aside of the final receipt can also be justified upon the basis of a mistake of law. The statement of defendant's superintendent that the receipt meant nothing was an incorrect statement of the law which defendant's superintendent should have known. The signing of a final receipt means a transfer of the burden in such cases, and defendant's agent in handling its compensation matters is chargeable with that knowledge of the law: As stated in Krumrine v. Titan Metal Mfg. Co. et al., 146 Pa. Superior Ct. 349, the statement of an adjuster ". . . at least evidenced a mistaken belief on the part of both adjuster and claimant as to what the claimant's rights were, which was the equivalent of a mistake of law." Thus in the present case, the belief of both parties that the execution of the final receipt was just a formality and meant nothing in the law, was a mutual mistake of the law. We recognize that claimant's hope that he would be able to return to work and perform his duties is insufficient to justify the setting aside of a final receipt even though both parties knew of a remaining disability from the accident: Schrein v. Fleischmann's Vienna Model Bakery, Inc., supra. But we deem it unnecessary to analyze the case from that angle since a mistake of law and the improper conduct elements are both present, either one of which is sufficient to justify the setting aside of the receipt.

This limits, therefore, the remaining discussion of the case to the question of whether or not the petition to set aside the final receipt was filed within the time prescribed by the compensation act. The board, in setting aside the final receipt, relied upon the wording of the opinion of the Superior Court in Ketzel v. Hammermill Paper Co., 159 Pa. Superior Ct. 462, which indicates that the amendment of 1939 limits the time to "two years after the execution of the final receipt". If this interpretation were adopted, much uncertainty would develop since the actual time a receipt is exe-

cuted might vary materially from the date of the receipt and be difficult to prove. That is apparent in the present case because, although the receipt was dated November 10, 1944, it was not signed, or the check attached to it endorsed until some time thereafter, presumably in December. We do not believe the legislature intended such a situation. Claimant's counsel would have us say there is ambiguity in the wording of the statute, and that therefore the reasonable interpretation of it would be that the limitation period began with the date of the receipt rather than with the date to which payments were made as evidenced by the receipt. Such an interpretation would be helpful to claimant in this case, but generally we see no good reason why the date of the receipt is more definite or easily remembered than the other date referred to in the same paper. We appreciate that claimant retains in his possession neither the check nor the final receipt to refresh his memory, but that may be the very reason the legislature adopted the date to which the payment was made. Claimant might well remember the date of his recovery and his return to work more readily than some promiscuous date the employer selected to provide and submit a final receipt. We can find no ambiguity in the section involved to enable us to adopt a reasonable as against a limited interpretation. The wording is clear and understandable, and permits no indulgence on our part to this or any other claimant. We are therefore constrained to follow the wording of the statute rather than the words used by the Superior Court in the Ketzel case (supra), particularly since the point of controversy with which we are concerned here was not at issue there. The reasonableness of, or the effect of, the statute is not for us to consider when the words of same are clear: The Statutory Construction Act of May 28, 1937, P. L. 1019,

art. IV, sec. 51, 46 PS §551; Imperial Cardiff Coal Co. Appeal, 156 Pa. Superior Ct. 301.

Interpreting the section of the act as we have done, it would appear that claimant did not file his petition within the period he was entitled to do so. The mailing of the petition from Pittsburgh on November 2, 1944, cannot be considered as being within the two-year period. It has been held that the mailing of a claim petition on next to the last day by registered mail is sufficient (Laffey v. Philadelphia & Reading Coal & Iron Co., 125 Pa. Superior Ct. 9; Horn v. Lehigh Valley R. R. Co., 274 Pa. 42) although it may not be received by the board until the day after the last day for filing, or may have been lost in the mail, and in Buber v. South Penn Coal Co., 25 Schuyl. 229, a petition mailed on the last day, and received by the board at Harrisburg the next day, was held to be filed within the time limit. However, as we view this case, November 2, 1942, was the first day of the two-year limitation period, compensation having been paid to that date, November 1, 1942, being the last day for which compensation was paid, and the two-year period would therefore have expired at midnight between November 1, 1944, and November 2, 1944. Thus, this petition was not filed until the day after the last day for filing, even though we should consider it filed on the day it was placed in the mail. We have also considered the Act of June 20, 1883, P. L. 136, 76 PS §172, which provides for the exclusion of the first day and the inclusion of the last day in determining the last day for claimant to have filed his petition, but conclude that November 1, 1942, would be the day excluded from the computation, and not November 2nd, although a payment for November 1st might be considered a payment to November 2nd (meaning up to, but not including). However such a strained construction of the act cannot be sustained by the decisions, all of

which we have read exclude the day on which a judgment or other order was entered, or act performed and not the day after. Further, the board has made a specific finding of fact: "Compensation was due the claimant to November 1, 1942."

Similar limitations in the compensation act have been enforced: Mackanitz v. Pittsburgh & West Virginia Ry. Co., 157 Pa. Superior Ct. 359, in which claim petition was barred because filed 11 days beyond the time limit. Also, the courts may not extend the time for filing petitions even in meritorious cases: Sweeney v. Reading Co., 146 Pa. Superior Ct. 539; Rowles v. State Workmen's Ins. Fund et al., 141 Pa. Superior Ct. 193. We have examined Kovach v. Union Drawn Steel Co. and Aetna Life Ins. Co., 99 Pa. Superior Ct. 302, cited by claimant as authority for this court to extend for one day the time for filing claimant's petition, but our reading of that case fails to bring us to that conclusion. In it, an appeal from the judgment for defendant in a workmen's compensation case had been taken within the 30-day period allowed by section 427 of the amendatory Act of June 26, 1919, P. L. 642; the certiorari had issued from the Superior Court clerk's office, but the appeal had not been perfected by the filing of the certiorari in the prothonotary's office of the common pleas court until the 31st day after the original judgment had been entered. The court refused a motion to quash for the tardiness in filing the certiorari for the reason that the section under consideration was interpreted in the same fashion as the general Appeal Act of May 19, 1897, P. L. 67, to mean "that the appeal must be perfected by filing the certiorari in the court below within the time limited for taking the appeal, or *within a reasonable time thereafter*" (Italics supplied); and that one day was not an unreasonable time thereafter. This is clearly distinguishable from the present situation.

We must therefore determine whether or not defendant in any way is prevented from setting up the time provision of the section as a defense or bar to claimant's petition, and we have come to the conclusion that defendant by its actions is not entitled to rely upon such a defense. While it is true the statute in question is not a statute of limitation as commonly understood (Bertges v. Armour & Co. of Del., 149 Pa. Superior Ct. 123), it does have some of the characteristics of a statute of limitation. Since The Workmen's Compensation Act is to be given a liberal interpretation so as to protect injured employes in their rights, we believe that the doctrine of estoppel applicable to regular statutes of limitation should apply in compensation cases. Therefore, if an employer has by its words or actions lulled a claimant into security so that he has failed to exercise his rights within the time limit, or has in any other way by agreement, fraud or other conduct indicated that it will not take advantage of the time limitation, it should not be permitted to do so. In Gibson Estate, 153 Pa. Superior Ct. 413, 419, it was said:

" 'If a man is silent when he ought to speak, equity will debar him from speaking when conscience requires him to be silent. Silence when there is a duty to speak is deemed equivalent to concealment.' "

In McMeekin v. Prudential Ins. Co., 348 Pa. 568, claimant on an insurance policy, relying on a statement made by a representative of the company that it was not refusing payment, but wished time to ascertain the degree and permanency of disability, failed to enter suit within the prescribed time. The court there said (p. 572):

". . . If in the course of the negotiations the company gave the plaintiff reasonable grounds for believing that the time limit would be extended or that such provision would not be strictly enforced, it could not subsequently insist on its strict enforcement without giving him a reasonable time thereafter to bring his

action: . . ." and it further states that " '. . . the waiver need not be express. It may be inferred from the acts of the insurers evidencing a recognition of liability, or even from their denial of obligation exclusively for other reasons' ".

We believe that to be the situation here. Claimant quit work December 1, 1943, made known to the company his disability and his desire to be reinstated upon the compensation rolls; the company placed him in the hospital in September 1944 to determine the amount of his injury; John Wusels, a representative of the United Mine Workers, representing claimant during the year 1944, negotiated with defendant immediately for a settlement of claimant's renewed claim and the hospitalization of claimant during that period was for the purpose of trying to reach a settlement. Subsequently, Mr. Krimsly, attorney for claimant, engaged to prosecute the renewed claim, communicated with defendant within the two-year period for the purpose of determining the date of the final receipt which was in defendant's possession. Mr. Nelson, a witness for defendant, employed in its compensation department, admitted that Mr. Krimsly did call him to discuss the final receipt, and also the check accompanying same. His testimony was:

"Q. Didn't we discuss the final receipt?

"A. We did. The date.

"Q. We discussed the date of the final receipt?

"A. Yes.

"Q. Do you recall the date of the final receipt?

"A. Yes. That's what you asked for.

"Q. Did you give me the date of the final receipt?

"A. I did.

"Q. So that when Mr. Chaplin asked you about the date of the check, you also remember me talking to you about the date of the final receipt. Is that correct?

"A. The date I gave you, yes.

"Q. What was the date?

"A. November 10th."

We can visualize no reason for the inquiry concerning the date of the final receipt other than to determine the last date to file a petition under the section of the act we are considering. The company was fully informed about the renewed claim of Mr. Silsley. It had placed him in the hospital to determine the extent of his claim; it had negotiated with the representatives of the union for the settlement of it, and it certainly knew without question the purpose of Mr. Krimsly's calls to determine the date of the receipt in its possession. If it was of the same opinion as he, that the time period was determined by the date of the receipt, and not by the date to which compensation had been paid as evidenced by the receipt, then there was a mutual mistake of law of which in good conscience it should not be permitted to take advantage. On the other hand, if the representative of the company knew the governing date to be November 1st, instead of November 10th, he was duty bound to speak rather than remain silent when he knew or should have known claimant and his lawyer were relying upon a mistaken idea of the law. When he examined the final receipt for the date it would have been very simple to volunteer the other information appearing on the face of the receipt. By the testimony of Mr. Nelson he indicates that he did know the other date was November 1st, but that he merely supplied the information requested, the date of the receipt and of the check, knowing that reliance upon that date might be prejudicial to claimant. We are therefore of the opinion that the company cannot take advantage of the limitation period set forth in the statute under these circumstances. It would be unjust and unconscionable to permit it to do so, particularly in compensation matters.

Defendant's first, sixth and ninth exceptions will be sustained, but all the others dismissed, the award will be sustained and judgment entered thereon.

Although the board vacated the referee's finding of fact relating to the effect of defendant's action concerning the inquiry of claimant's attorney as to the date of the final receipt, which we have no authority to reinstate, there does remain a finding of the board (third) that such an inquiry was made. Likewise, although we have sustained defendant's exception to the finding and conclusion that the final receipt was executed under a mistake of fact, there remains a finding of the board (seventh) that the final receipt was procured through improper conduct on the part of defendant. Nevertheless, since we are privileged to add our own conclusions of law, which we have done herein, we believe the record to be sufficient to warrant the entry of judgment on the award.